Joseph L. Franco, OSB No. 073913
E-mail: joe.franco@hklaw.com
Sarah Molinoff, OSB No. 215833
Email: sarah.molinoff@hklaw.com
**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300
Fax:  503.241.8014

*Attorneys for Manuel Castaneda, Rosa Castaneda,*
*and Better Way, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MANUEL CASTANEDA, ROSA CASTANEDA, and BETTER WAY, LLC, an Oregon limited liability company,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CITY OF DEPOE BAY, a municipality and political subdivision of the State of Oregon,<br><br>                    Defendant. | Case No. _____<br><br>COMPLAINT<br><br>JURY TRIAL REQUESTED |

Plaintiffs Manuel Castaneda, Rosa Castaneda (the "Castanedas"), and Better Way, LLC ("Better Way"), for their complaint against defendants the City of Depoe Bay ("Defendant" or the "City"), allege as follows:

**INTRODUCTION**

1.      Better Way is an Oregon limited liability company wholly owned by the Castanedas, who reside in Beaverton, Oregon.

2.      Better Way owns property composed of approximately 6,970 sq. ft. within the city limits of the City of Depoe Bay, Oregon (the "Property") located at 130 NW Sunset Street, and identified on Lincoln County Assessor's Map 09-11-05-CA as tax lot 13500.

3.      The Castanedas' property is zoned Residential R-4 and a "single family dwelling" is a use that is "permitted outright on the site, subject to" certain other city code provisions, including a requirement for a 20-foot front yard setback from Sunset Street from which the lot takes its access.  It is also subject to a setback for "slight coastal erosion."  The property is further subject to the "Coastal Shorelands Overlay Zone" and an "area of visual concern" which requires a 40-foot setback measured from the "top of bluff."  Under these restrictions, there is no "buildable area" of the Castanedas' residential lot because all that is left is an area approximately 20 feet deep at its west end, that tapers to only a few feet at the east end of the lot—a total of about 12 feet of lot depth.

4.      The Castanedas' residential lot is the only undeveloped residential lot in the area. It is surrounded by similarly zoned and restricted developed single-family residential homes on all sides except the south side which faces the Pacific Ocean.

5.      The Castanedas have long dreamed of building their home on the Property for their family, which is large and contains several individuals who are disabled.

6.      Better Way has submitted two Zoning Action Applications to the City to request approval for their home, including requests for variances or exceptions (referred to together here as "variances") from some of the restrictions for a proposed new house on the Property. Better Way appealed the second denial to the City Council, which affirmed the denial.

7.      The City denied Better Way's applications for variances while at the same time granting requests for similar or greater variances from the Property's surrounding neighbors. By doing so, the City has imposed conditions on Better Way and the Castanedas that the City did not impose on residents of the surrounding properties.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

8.      In denying Better Way's second application, the City eliminated any possibility of building a home on the Property that would allow the Castanedas and their family to live there.

9.      As a result of these actions, the City has prevented Better Way's use of the Property and deprived Plaintiffs of their property rights and liberty interests, caused financial damages, and treated Plaintiffs differently from their neighbors. Plaintiffs bring this suit to obtain just compensation for the City's taking of their property and to remedy the damages caused by the City's unconstitutional and illegal conduct.

## PARTIES

10.     Manuel Castaneda is a resident of the State of Oregon. Manuel Castaneda was born in Mexico, is a naturalized U.S. citizen, and is of Hispanic descent.

11.     Rosa Castaneda is a resident of the State of Oregon. Rosa Castaneda was born in Mexico, is a naturalized U.S. citizen, and is of Hispanic descent.

12.     Better Way is registered as a limited liability company under the laws of the State of Oregon, with its principal place of business in Hillsboro, Oregon.

13.     Defendant City of Depoe Bay is a municipality and political subdivision of the State of Oregon. The Planning Commission of Defendant is the City's decision-making body for land use decisions in the City and makes decisions on behalf of the City. The Planning Commission's decisions can be appealed to the City Council.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, because claims in this action arise under the United States Constitution and 42 U.S.C. § 1983.

15.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in the United States District Court, District of Oregon, Portland Division, because the events giving rise to the claims took place within this District.

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

**FACTUAL BACKGROUND**

17.     Better Way's Property is located on NW Sunset Street between NW Spencer Ave. and NW Siletz Ave., on the south side of the street between 110 NW Sunset St. and 220 NW Sunset St.

18.     The Castanedas purchased the Property in or around 2005 in the hope that they would someday be able to build a home for their family. On or about June 24, 2020, the Castanedas transferred ownership to their wholly-owned LLC, Better Way.

19.     The Depoe Bay Zoning Ordinance ("DBZO") mandates certain setbacks when property owners build new residences. These setbacks are described in detail in the DBZO. Better Way's Property is subject to several of these setbacks, but the Property also has an existing lot depth (average of just under 70 feet) that is less than the base zone minimum depth of 80 feet. Combined with the cliff face on one side of the Property, the lot would be unbuildable without variances from the setbacks.

20.     Since they purchased the Property, Plaintiffs have been paying property taxes on the Property and saving money in order to someday be able to build a home there.

**August 13, 2021 Application.**

21.     On August 13, 2021, Better Way submitted a Zoning Action Application ("2021 Application") for their home and variances on the Property that would allow the Castanedas' family, including those with disabilities, to live there.

22.     The 2021 Application requested variances for area of coastal erosion setback, area of visual concern setback, front yard setback, and rear yard setback (for a deck encroachment).

23.     Following a hearing on October 13, 2021, and a continuance on November 10, 2021, the City's Planning Commission voted on November 10, 2021, to deny Better Way's request to construct their home, and issued a final decision on December 1, 2021, setting forth the reasons for its decision. (Ex. 1.) The Planning Commission found that the requested variances were necessary only because of the size of the proposed residence and were not the

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

minimum number or size of variances that could have been requested. Thus, the Planning

Commission found that the requested variances were not necessary to preserve Better Way's

property rights. Further, the Planning Commission found that the proposed residence disrupted

the visual character of the area and that such disruption could be further minimized. (Ex. 1 at 9-

10.) City Councilmember Recht submitted a letter in opposition to the Castanedas' application.

**January 10, 2023 Application.**

24.     On January 10, 2023, Better Way submitted a new Zoning Action Application

("2023 Application") for a variance to build a re-designed home on the Property.

25.     The new proposal was for a narrower residence that eliminated several things that

were important to the Castanedas including features that allowed persons with disabilities to

access all parts of the home, such as an elevator for elderly and disabled family members, and

reduced the number of bedrooms from 4 to 3.

26.     The 2023 Application sought a variance from the 40-foot area of visual concern

setback and a variance to reduce the front-yard setback from 20 feet to 10 feet.

27.     Neighbors to the Property organized opposition to the Castanedas' 2023

Application. On information and belief, one or more neighbors went into the Property and cut

down trees. The Castanedas contacted the City, and the City informed the Castanedas that they

could not do anything about it.

28.     Similarly, although the Castanedas added "No Parking" signs to the Property, on

information and belief, neighbors who lack garages took away the signs and continued to use the

Castanedas' lot as a parking area. At one point, a car was set on fire on the right-of-way next to

the Castanedas' fence.

29.     Over the years, on information and belief, at least one person has died while

climbing down a neighboring slope; another drove a car through the Property and over the cliff

to commit suicide.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

30.     The Castanedas chose to install a 6-foot fence around the Property to avoid further issues with tree-cutting and parking and to limit their liability in the event someone injured themselves on the Property. After receiving a complaint about the fence, the City investigated and confirmed that the fence was on the Property and did not exceed height limits. However, the Castanedas eventually removed the fence after the City determined that it required a permit. The individual who filed the complaint was L. Bedingfield, a member of the Depoe Bay City Council.

31.     Around this time, an abutting property at 230 NW Sunset Street received a setback variance from 20 feet to only 1 foot—a far greater variance than the 10-foot setback that the 2023 Application requested. Similarly, the Castanedas' geotechnical engineer, Jim Imbrie, received three variances in order to build his home: 1) a variance to reduce the setback behind the house from 40 feet to 27 feet, 2) a variance to the front-yard setback from 20 feet to 15 feet, and 3) a variance on one side of the house from 20 feet to 7 feet.

32.     Moreover, the house to the east of the Property has an average front-yard setback of 7 feet 3.5 inches. The house to the west of the Property has an average front-yard setback of 3 feet 5.5 inches. The setbacks on either side of the Property are far less than the 10-foot front-yard setback for the proposed residence.

33.     In a written narrative dated February 7, 2023, Better Way's architect, Gabriel Headrick, explained to the Planning Commission that variances were necessary to make any residential project "viable" due to the size of the lot and the setback requirements.

34.     Jim Imbrie, the Castanedas' geotechnical engineer, also sat on the Planning Commission and recused himself from the deliberations and voting on the 2023 Application.

35.     The City's professional planning staff had recommended approval of the Castanedas' application.

36.     On March 23, 2023, the Planning Commission voted to deny the 2023 Application by a 2-2 vote. (Ex. 2.) The Planning Commission found that the proposed residence

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

was consistent with development and parking standards under the applicable zoning laws. The Planning Commission further found that the proposed residence did not impact or encroach upon the Coastal Erosion setback. However, the Planning Commission claimed that the proposed residence did not minimize disruption of the area of visual concern because the house could be redesigned to reduce its visual prominence and be located further outside the 40-foot setback. In addition, the Planning Commission claimed that a variance to the front-yard setback was not justified because it contributed to the encroachment into the area of visual concern, even though the front-yard setback was "consistent with similar reduced front-yard setbacks on other nearby properties." (Ex. 2 at 12.) The Planning Commission found that the 10-foot reduction in front-yard setback was not the minimum necessary, despite the fact that other properties in the area had reduced front-yard setback conditions, because the setback requirements had been "adopted with the intention of eliminating non-conforming setbacks over time." (Ex. 2 at 13.)

37.    The Planning Commission denied the 2023 Application despite granting a neighbor's application around the same time for a 1-foot front-yard setback at 230 NW Sunset Street, which was a far greater variance than the 10-foot front-yard setback requested by Better Way.

38.    The Planning Commission did not identify, through any ascertainable standard or otherwise, how small the house would need to be in order to "minimize disruption of the area of visual concern," or what amount of front yard setback the Planning Commission would consider the "minimum necessary." In this way, the Planning Commission set up an arbitrary and capricious moving target that was entirely discretionary, and at their whim, could never be objectively satisfied.

39.    Upon information and belief, the Castanedas—who are members of a suspect class—were treated differently from their neighbors, who are not members of a suspect class.

40.    On information and belief, of the Planning Commission's two "No" votes, one vote was purportedly based on "safety concerns," even though the Planning Commission

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

acknowledged that the proposed residence will be safe, will not encroach on the Costal Erosion setback, and will have no detrimental impact on the geological stability of the area or underlying the Property. (Ex. 3 at 6-7.) On information and belief, the other "No" vote was based on the footprint, despite the fact that the proposed residence is no more intrusive into the area of visual concern than the surrounding properties (and in fact is less intrusive than some of the surrounding properties). To be clear, the footprint and/or square footage of the home the Castanedas wanted to build was smaller than that of some of the homes in the immediate vicinity of their lot.

41.     Better Way appealed the Planning Commission's decision to the City Council. One of the City Councilors, Councilor L. Bedingfield, admitted to being the same individual who had filed a code enforcement complaint with the City about the fence that the Castanedas installed on their Property, and another of the City Councilors, Councilor F. Recht, admitted to filing a letter in opposition to the Castanedas' 2021 Application. (May 2, 2023 Hearing, https://www.youtube.com/watch?v=u0JkAGuJ1pg, at 34:52.) Although the Castanedas' lawyer stated that they should recuse themselves, neither did so. Depoe Bay Code of Ordinances § 31.22(B) provides that no City Councilor may participate in a discussion or vote on a proposal when "he or she has a direct personal interest" or "has determined that he or she cannot participate in the hearing or decision in an impartial manner." Depoe Bay Code of Ordinances § 31.22(D) further gives the public the right to a City Council free from pre-hearing or ex-parte contacts, and requires members to "reveal any significant pre-hearing ex-parte contacts with regard to any matter at the commencement of the public hearing of the matter," and to recuse himself or herself if such contacts have impaired his or her impartiality. Instead of recusing themselves, City Councilors Recht and Bedingfield vigorously participated in the City Council's deliberations seeking to persuade their colleagues to deny the Castanedas' application for their home.  The failure of City Councilors Recht and Bedingfield to recuse themselves deprived the

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

Castanedas of their right to a decision from an unbiased decisionmaker and substantially prejudiced their rights to a full and fair hearing on their application.

42.     In addition, Councilor Bedingfield, upon information and belief, engaged in pre-hearing and ex-parte contacts with opponents of Plaintiffs' 2023 Application without complying with ORS 277.180(3)(a)-(b), which requires local government officials to place on the record "the substance of any written or oral ex parte communications concerning the decision" and make a "public announcement of the content of the communication and of the parties' right to rebut the substance of the communication . . . at the first hearing following the communication where action will be considered."

43.     Councilor Bedingfield and Councilor Recht, upon information and belief having pre-judged the matter, voted against Better Way's application. Councilor Recht moved to uphold the Planning Commission's decision. After making this motion, but before the vote, Councilor Recht stated that the Property "should be in compliance with the code." (Minutes of May 2, 2023 Meeting,

https://www.cityofdepoebay.org/sites/default/files/fileattachments/city_council/meeting/6138/20 230502_cc_meeting_minutes.pdf, at 6.) Immediately thereafter, and before the vote, Councilor Bedingfield stated that "all lots are to conform to the zoning code just like every other property." *Id.* Thus, both Councilor Recht and Councilor Bedingfield, who should have but did not recuse themselves, stated on the record that Better Way's proposed residence needed to comply with the DBZO—despite knowing from Gabriel Headrick's February 7, 2023 narrative (which was made part of the hearing packet) that strict compliance with the code would make any residence on the Property infeasible. The City Council then affirmed the Planning Commission's decision on May 2, 2023, by a vote of 5-2. They did so despite one of the Councilors indicating on the record that he felt denial of the application may well expose the City of Depoe Bay to liability in the event the Castanedas filed suit.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

44.     The residence proposed in the 2023 Application represented _less than_ the minimum necessary requirements for the Castanedas and their family, including elderly and disabled individuals, to be able to live on the Property. The denial of the 2023 Application made clear that the City of Depoe Bay would not allow the Castanedas to build a home on their Property.

45.     The City's actions have (1) deprived Plaintiffs of their property rights in contravention of the United States Constitution and the Oregon Constitution; (2) deprived them of their property rights in contravention of the United States Constitution and the Oregon Constitution without due process of law; (3) deprived Plaintiffs of their procedural and substantive liberty interests in establishing their home on their property in contravention of the United States and Oregon Constitution without due process of law; (4) deprived Plaintiffs of their right to equal protection under the law, (5) caused financial damages; and (6) violated other federal and state laws. Plaintiffs bring this suit to remedy damages caused by the City's unconstitutional, illegal, and tortious conduct.

## FIRST CLAIM FOR RELIEF

### (Takings, U.S. Constitution, Fifth Amendment)

46.     Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

47.     The Fifth Amendment to the United States Constitution (the "Takings Clause") prohibits the government from taking private property for public use, without just compensation, either through a "physical taking[]" or through land use regulation that "goes too far." _Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency_, 535 U.S. 302, 321, 326 (2002) (citation omitted). The Fifth Amendment prohibits the government from taking of all economically beneficial use of property.  _Lucas v. South Carolina Coastal Council_, 505 U.S. 1003, 1015-16 (1992).

48.     In addition, the Takings Clause prohibits a local government from imposing an unreasonable exaction as a condition of development, unless there is an "essential nexus"

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

between a legitimate governmental interest and the exaction, *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987), and the exaction is "rough[ly] proportional[]" to the impact of the proposed development, *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994). *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) ("The principles that undergird our decisions in *Nollan* and *Dolan* do not change depending on whether the government approves a permit on the condition that the applicant turn over property or denies a permit because the applicant refuses to do so." (emphasis omitted)).

49.     Plaintiffs have a protected property interest in using their Property in a manner permitted by the City's zoning laws. Plaintiffs also have a protected property interest in having any uses for the Property considered fairly and without bias or pretext.

50.     Plaintiffs have a protected liberty interest in being able to establish their home on their residentially zoned property in the City in a fair process, without bias or pretext.

51.     The City Planning Commission's decision to deny the 2023 Application was a pretext to prevent development of the Property by the Castanedas, because the 2023 Application did not support such denial.

52.     The City's decisions denying the 2021 Application and 2023 Application have prevented Plaintiffs from any viable development or use of their Property and have thus taken the Property without just compensation in violation of the Fifth Amendment Takings Clause.

53.     The City's decisions were final decisions and no additional options remain available for the City to change or clarify its positions on the 2021 Application and 2023 Application. Plaintiffs were not required to appeal either decision to LUBA. *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2228 (2021).

54.     Plaintiffs are entitled to a declaration that the City's decisions denying the 2021 Application and 2023 Application were unconstitutional takings of the Property in violation of the Takings Clause, and that Plaintiffs are entitled to just compensation for the City's taking of their Property in an amount to be determined at trial, but expected to exceed $2,000,000.00.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

**SECOND CLAIM FOR RELIEF**

**(Takings, Oregon Constitution, Art. I, § 18)**

55.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

56.    Article I, section 18 of the Oregon Constitution prohibits the taking of private property for public use without just compensation.

57.    The City's decisions denying the 2021 Application and the 2023 Application have prevented Plaintiffs from any economically feasible development or use of the Property and have thus taken the Property without just compensation.

58.    The City's decisions were final decisions and no additional options remain available for the City to change or clarify its positions on the 2021 Application and 2023 Application.

59.    Plaintiffs are entitled to a declaration that the City's decisions denying the 2021 Application and the 2023 Application were unconstitutional takings of the Property in violation of Article I, Section 18, of the Oregon Constitution and that Plaintiffs are entitled to just compensation for the City's taking of its Property in an amount to be determined at trial, but expected to exceed $2,000,000.00.

**THIRD CLAIM FOR RELIEF**

**(Inverse Condemnation)**

60.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

61.    The City was at all relevant times and is a municipal corporation under the constitution and laws of the State of Oregon. By authority of the City Charter and ORS 223.005, the City is authorized to condemn and appropriate real property for public and municipal use.

62.    On March 23, 2023, the City, without first purchasing or condemning any of the Property, issued a final decision denying Plaintiffs' 2023 Application, which constituted a taking and appropriation of Plaintiffs' Property in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 18, of the Oregon Constitution.

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

63.     The City Planning Commission's decision to deny the 2023 Application was pretext to prevent development of the Property, because the 2023 Application did not support such findings.

64.     Plaintiffs are entitled to recover the value of the Property taken by the City in an amount to be proven at trial, but expected to exceed $2,000,000.00.

65.     Pursuant to ORS 20.085 and 42 U.S.C. § 1988, Plaintiffs are entitled to reasonable attorneys' fees.

66.     Plaintiffs are entitled to prejudgment interest at the rate of [nine] percent per annum on the just compensation from the date the City appropriated the Property until paid.

## FOURTH CLAIM FOR RELIEF

### (Due Process, U.S. Constitution, Fifth and Fourteenth Amendments)

67.     Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

68.     Under the Fifth and Fourteenth Amendments to the United States Constitution, a government may not deprive a person of property without due process of law, which at a minimum includes the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted).

69.     Under Oregon law, local government decision makers, when acting in a quasi-judicial role, must conduct themselves in a manner that protects the procedural and substantive rights of those affected by their decision, including the right to be heard, to present and rebut evidence, and to appear before an impartial tribunal.

70.     The City violated Plaintiffs' right to due process when it failed to protect their procedural and substantive rights by:

    a.  Allowing City Councilor Recht to exert improper influence on the City Planning decision on the 2021 Application through letter opposition.

    b.  Failing to have the two interested City Council members recuse themselves from participation in the decision-making on the 2023 Application.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

      c.    Allowing at least one interested City Council member to engage in pre-hearing and ex-party contacts with opponents of Plaintiffs' 2023 Application without complying with ORS 227.180(3)(a)-(b), which requires local government officials to place on the record "the substance of any written or oral ex parte communications concerning the decision" and make a "public announcement of the content of the communication and of the parties' right to rebut the substance of the communication . . . at the first hearing following the communication where action will be considered."

      d.    Denying the 2021 and 2023 Applications on unreasonable and arbitrary and capricious grounds.

71.    Because Plaintiffs were not afforded the procedural rights provided by state and federal law for local government decision-making, and because Plaintiffs were denied their property rights and liberty interests arbitrarily and capriciously by the City, Plaintiffs are entitled to a declaration that the City's order denying the 2023 Application deprived Plaintiffs of their property rights and liberty interests without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and that such decisions are unconstitutional and unenforceable. Plaintiffs are further entitled to damages as a result of the due process violations in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (Equal Protection, U.S. Constitution)

72.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

73.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

74.    The Planning Commission and City Council issue decisions pursuant to generally applicable Depoe Bay Zoning Ordinances. Other applicants such as neighbors to the Property

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

received approvals from the City for their homes and were granted variances that were similar or greater than those sought by Plaintiffs. The Castanedas, meanwhile, were denied all their requested approvals when the City denied the 2021 Application and the 2023 Application. For example, at least one neighbor received a variance approval to build their home to reduce the front-yard setback to just 1 foot, while the Castanedas were denied permission to build a house with a 10-foot setback.

75.     The Castanedas are Hispanic and naturalized citizens, and thus members of a suspect class.

76.     The City's selective enforcement of the Depoe Bay Zoning Ordinance against the Castanedas, and its refusal to enforce the Code against other similarly situated property owners in the same neighborhood, is a blatant denial of the Castanedas' right to equal protection of the laws.

77.      The City's disparate treatment of the Castanedas is intentional and lacks a rational basis.

78.     When a local government enforces generally applicable laws to the disadvantage of only one individual or entity, without a legitimate reason, the government's action violates the Equal Protection Clause. *Pro-Eco, Inc. v. Bd. Of Comm'rs of Jay Cnty.*, 57 F.3d 505, 515 (7th Cir. 1995); *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886).

79.     The City's actions, which violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, should be declared unconstitutional and unenforceable. Plaintiffs are entitled to damages, including punitive damages, as a result of the equal protection violations in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

1.     On their First Claim for Relief, declare that the City's decisions to deny the 2021 Application and 2023 Application violate the Takings Clause and that Plaintiffs are entitled to

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

just compensation for the City's taking of their Property in an amount to be determined at trial, but expected to exceed $2,000,000.00;

2.      On their Second Claim for Relief, declare that the City's decisions denying the 2021 Application and the 2023 Application were unconstitutional takings of the Property in violation of Article I, Section 18, of the Oregon Constitution and that Plaintiffs are entitled to just compensation for the City's taking of its Property in an amount to be determined at trial, but expected to exceed $2,000,000.00;

3.      On their Third Claim for Relief, order that the City pay just compensation to Plaintiffs for an inverse condemnation of the Property in an amount to be proven at trial, but expected to exceed $$2,000,000.00, plus prejudgment interest at the statutory rate;

4.      On their Fourth Claim for Relief, award damages and enter a declaration that the City deprived Plaintiffs of their Property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution when it unreasonably denied the Castanedas' application for their home and ignored Oregon law in its review of the 2023 Application and, therefore, its decision is unenforceable;

5.      On their Fifth Claim for Relief, award damages, including punitive damages, and enter a declaration that the City violated the Equal Protection Clause when it denied the 2021 Application and 2023 Application and, therefore, its decisions are unenforceable;

6.      Award costs of suit and attorneys' fees pursuant to ORS 20.085, 42 U.S.C. § 1983, and as otherwise allowed; and

7.      Provide such other and further relief as the Court deems just and proper.

**JURY TRIAL REQUESTED**

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

DATED: November 30, 2023

HOLLAND & KNIGHT LLP

By: *s/ Joseph L. Franco*
    Joseph L. Franco, OSB No. 073913
    Email:  joe.franco@hklaw.com
    Sarah Molinoff, OSB No. 215833
    Email: sarah.molinoff@hklaw.com
    601 SW Second Avenue, Suite 1800
    Portland, OR  97204
    Telephone:  503.243.2300
    Fax:  503.241.8014

    *Attorneys for Plaintiffs Manuel Castaneda, Rosa Castaneda, and Better Way, LLC*

# CITY of DEPOE BAY

Post Office Box 8 + Depoe Bay, Oregon 97341
Phone (541) 765-2361 + Fax (541) 765-2129
TDD# 1-800-735-2900

December 1, 2021

Manuel Castaneda
Better Way, LLC
3045 SE 61st Ct.
Hillsboro, OR 97123

Via Email: manuel@plisystems.com

**Re:** **Case File #3-CS-PC-21 Coastal Shorelands Overlay Zone & Request For Variance**
**130 NW Sunset Street, Depoe Bay, OR 97341**
**Tax Map 09-11-05CA, Tax Lot 13500**

Dear Mr. Castaneda:

On Wednesday, November 10, 2021 the Depoe Bay Planning Commission voted to deny the above request for a variance. The Findings, Conclusions and Final Order, including the reasons for denial, are enclosed.

This decision will become effective on Thursday, December 16, 2021 at 5:00 p.m. unless an appeal is filed at Depoe Bay City Hall. In order to appeal the decision of the Planning Commission, it is necessary to submit a fee/deposit of $2,001.00, along with a written statement explaining the reason for the appeal.

Please contact me if you have any questions.

Sincerely,

Jaime White
City Planner

Enclosure:   Findings, Conclusions, and Final Order

APPS CS/#3-CS-PC-21 BETTER WAY/DECISION-APPEAL LETTER

Ex. 1 to Complaint
Page 1 of 12

**BEFORE THE PLANNING COMMISSION**

**OF**

**DEPOE BAY, OREGON**

| | |
|---|---|
| **Coastal Shorelands Overlay Zone & Request for Variance** | ) **Case File: 3-CS-PC-21** |
| | ) **Findings, Conclusions, and Final Order** |
| **Applicant:  Better Way, LLC** | |

### A.  <u>NATURE OF THE APPLICATION</u>

The applicant requested approval for development in the coastal shorelands overlay zone to construct a new single-family dwelling.  The applicant also requested variances to the following:

- Coastal Setback – Area of Coastal Erosion
- Coastal Setback – Area of Visual Concern
- Front Yard Setback
- Deck Encroachment Into Rear Yard Setback.

### B.  <u>RELEVANT FACTS</u>

1. **<u>Property Location:</u>**  The subject property is located at 130 NW Sunset Street, and is further identified on Lincoln County Assessor's Map 09-11-05-CA as tax lot 13500.



Tax Lot No. 09-11-05-CA-13500

2. **<u>Lot Size and Dimensions:</u>**  The lot totals approximately 0.16 acres with road frontage of approximately 113 feet on the north, depth varying from 78 feet to 62 feet, on the west and east respectively, and an irregular shore line on the south of approximately 100 feet.

3. **<u>Zoning Designation:</u>**  Residential Zone R-4.

4. **Plan Designation:** Residential

5. **Surrounding Land Use:** Single family residential uses are located to the east, west, and north. Depoe Bay and the Pacific Ocean are immediately to the south.

6. **Topography and Vegetation:** (paraphrased from August 13, 2021 Geotechnical report) The property is gently sloped to the east and steeply sloped to the south for a height of approximately 70 feet down to the bay. Some fill is present, vegetation consists mainly of grasses and some small bushes/shrubs.

7. **Existing Structures:** None.

8. **Utilities:** The following utilities currently serve the subject property:
   a. <u>Sewer:</u> City sewer service
   b. <u>Water:</u> City water service
   c. <u>Electricity:</u> Central Lincoln P.U.D.

9. **Development Constraints:**
   a. 'Areas of coastal erosion' standard of the Coastal Setback requirement.
   b. 'Areas of visual concern' standard of the Coastal Setback requirement.

10. **Public Hearing, Notice and Testimony:** A public hearing was held on October 13, 2021 before the Depoe Bay Planning Commission with a continuance on November 10, 2021. Property owners within the notice area were duly notified of the public meeting. All interested parties were given an opportunity to provide written and oral testimony. At the October 13, 2021 and November 10, 2021 Planning Commission meeting, the applicants provided oral testimony and answered questions.

   Seven written testimonies in support of the proposed development were received. Eight written testimonies in opposition to the proposed development were received, two of which expanded on previously submitted written testimonies. One of the opposing written testimonies requested a continuance of the October 13, 2021 Public Hearing. One of the opposing written testimonies requested the record be kept open for seven days after the November 10, 2021 Public Hearing.

   At the October 13, 2021 meeting, five people provided oral testimony in opposition to the proposed development, some reiterating previously submitted written testimony.

   At the November 10, 2021 meeting, five people provided oral testimony in favor of the proposed development, some reiterating previously submitted written testimony. Five people provided oral testimony in opposition to the proposed development, some reiterating previously submitted written testimony.

   All testimony is herein incorporated into the record.

## C. **RELEVANT CRITERIA**

1. **Relevant Depoe Bay Zoning Ordinance Criteria:**
   Depoe Bay Zoning Ordinance (DBZO) No. 24 (as amended)
   a. Section 3.040: Residential Zone R-4
   b. Section 3.360: Coastal Shorelands Overlay Zone

     c.   Section 4.030: Off-Street Parking
     d.   Section 4.060: Decks
     e.   Section 4.820: Protection of Coastal Headlands, Areas of Exceptional Aesthetic Resources
     f.   Article 8: Variances
     g.   Article 13.080: Development Guidelines – Areas of Coastal Erosion, Areas of visual Concern.

2. **Applicant's Proposal:**
The applicant requested approval of a coastal shorelands overlay application to build a new single-family dwelling. Variances were requested for area of coastal erosion setback, area of visual concern setback, front yard setback, and rear yard setback. The applicant submitted the following:
   - Application form and fee/deposit for Substantial Development in the Coastal Shorelands Zone
   - Application form and fee/deposit for Variance
   - Narrative addressing variance requests, submitted August 13, 2021
   - Supplemental narrative addressing variance requests, submitted November 3, 2021
   - Supplemental visual exhibits, submitted November 3, 2021
   - Geotechnical and Geological Engineering Recommendations for Foundation dated August 13, 2021
   - Site Plan
   - Building elevations.

   All submitted documents are herein incorporated into the record.

D. **FINDINGS**

The Planning Commission finds:

1. **R-4 Residential Standards and Parking Space Requirements.** The following table identifies the R-4 standards and the proposed development.

| | Standard | Proposed |
|---|---|---|
| **Front Yard** | Min. 20' | 10'* |
| **West Side Yard** | Min. 5', or 1' for each 3' of building height, whichever is greater. | 11'-8" |
| **East Side Yard** | The proposed building height is 35' therefore the required side yard setback is 11'-8". | 11'-8" |
| **Rear Yard** | Min. 10' | 10'** |
| **Building Ht.** | Max. 35' | 35' |

  * Variance requested for front yard from required 20' to 10' setback.
  ** Proposed rear yard setback meets R-4 residential standards for the structure. However, Variances are requested for area of coastal erosion, area of visual concern, and a deck.

The R-4 zone requires 2 parking spots for a single-family residence. The site plan identifies a two-car garage as well as a driveway.

**The applicant requested a variance to the front yard setback from the required 20 feet to 10 feet, a variance of 10 feet.** If the house were to comply with the required 20-foot

front yard setback, the back of the house would be at the edge of the bluff, resulting in no back yard setback.

A 10-foot front yard setback would be consistent with immediately adjacent properties. A visual site inspection verified that approximately half the homes in the north point area appear to be non-conforming for front yard setbacks.

The proposed structure would result in a 10-foot rear yard setback. However, the applicant proposed a deck that would extend into the rear yard setback by 9 feet. DBZO code allows intrusion of 1/3 into a yard setback (3.33 feet in this case).

**The applicant requested a variance for the deck intrusion into the rear yard setback from the allowed 3.33 feet to 9 feet.**

2. **Coastal Setback – Area of Coastal Erosion.** In the Areas of Coastal Erosion, no excavating, filling, or placement of retaining walls, deck posts or other permanent structures is allowed, unless based on a Geological Hazard Report approved by the Commission. Based on the August 13, 2021 GeoPacific investigation, long-term cliff recession rates are on the order of 1 to 3 inches per year, with greater recession rates expected within the cave beneath the proposed home due to higher hydraulic pressures.

DBZO Section 13.080 establishes erosion potential as follows:
- Less than 2.8 inches/year…..slight
- 2.8 to 11.3 inches/year…..moderate
- More than 11.3 inches/year…..severe.

The following coastal setbacks are required for the above:
- Slight erosion…..1 foot of setback for each 1 foot of bank height
- Moderate erosion…..2.15 feet of setback for each 1 foot of bank height
- Severe erosion…..2.75 feet of setback for each 1 foot of bank height.

The applicable area of coastal erosion is just greater than slight, falling between slight and moderate. The National Oceanic and Atmospheric Administration (NOAA) identifies the Mean Higher High Water Mark for Depoe Bay at 8.24 feet. Assuming a property elevation of 70 feet, the bank height (70 minus 8.24) would be 61.76 feet, resulting in a coastal setback of 62 feet for sight erosion (1:1) and 133 feet for moderate erosion (2.15:1).

For illustrative purposes the coastal setback on the site plan is shown at 62 feet (slight erosion potential) from the edge of the bluff, since the property averages 70 feet in depth, and a setback of 133 feet (moderate erosion potential) would be well north of the north property line.

**The applicant requested approval of structural support measures and a coastal setback of 10 feet, a variance of 52 feet for the slight erosion potential scenario and a variance of 123 feet for the moderate erosion potential scenario.**

#3-CS-PC-21 Better Way
Findings, Conclusions, and Final Orders



3. **Coastal Setback – Area of Visual Concern.** DBZO Section 13.080 establishes the area of visual concern as an area 25 feet landward from the top of the coastal bluff.

DBZO Section 13.081 states that no grading, excavating, or filling that changes the profile of the top of the bluff or the slope seaward from its top; vegetation removal; or placement of a building is allowed with some exceptions for vegetation pruning or removal, and placement of benches, tables, chairs, and gazebo.

The proposed structure is approximately 10 feet from the top of bluff. The proposed residence would impact the visual setback.

**The applicant requested approval of a coastal setback of 10 feet, a variance of 15 feet for the area of visual concern required setback of 25 feet.**

**A rear deck is proposed that would intrude 9 feet into the rear yard setback. The net result is a coastal setback for the area of visual concern of one foot.**

4. **Geotechnical Report Recommendations.**

#3-CS-PC-21 Better Way
**Findings, Conclusions, and Final Orders**

The Geotechnical and Geological Engineering Recommendations for Foundation report was prepared August 13, 2021. The report includes design and construction recommendations for a new foundation system for support of a single-family home.

Conclusions and Recommendations are as follows:

*Based on the results of this geotechnical study, we recommend that the southern side of the proposed home be founded on a tied back deep foundations and the portion of the home above the sea cave utilize an enlarged structural slab. GeoPacific's conclusions with regard to cliff face stability and recommendations for replacement wall design and construction are summarized as follows:*

1. *The wall/cliff face failures were caused primarily by wave erosion which is an on-going natural process. The estimated long-term average rate of cliff recession is on the order several inches per year. Actual failure of the upper cliff face occurs rapidly as masses of undermined, less competent marine terrace deposit slump and/or slough away.*

2. *We recommend that a deep foundation and structural slab be constructed to stabilize the upper portion of the cliff face. The recommended retaining wall system is a soldier pile retaining wall constructed as shown in the cross-section details presented in Figures 2 and 3. Slope stability calculations are attached.*

3. *Pile wall construction should conform to the following design criteria:*

   a) *Piles should consist of 24-inch diameter reinforced concrete shear piles at 6-foot center to center or better and a minimum of 10 feet of embedment into the sandstone.*

   b) *Tieback anchors should be embedded a minimum of 10 feet into the sandstone, angled at approximately 33 degrees, and must have an allowable capacity of at least 60 kips.*

   c) *GeoPacific has not performed any boundary surveys or topographic mapping; all locations are approximate.*

   d) *Legal and permitting issues relative to construction in street right of ways are beyond GeoPacific's scope of work.*

   e) *Contractor to locate and protect all existing utilities.*

   f) *Foundation designs are based on assumed maximum extent of slope erosion during wall lifetime which is impossible to determine with accuracy; if actual erosion exceeds that assumed during life of the structure, additional structural support measures may be necessary. For example, if the loose, medium dense silty sand in the upper portion of the cliff sloughs off and exposes the drilled shafts, it may be necessary to install reinforced shotcrete facing on the downslope sides of the drilled shafts.*

**#3-CS-PC-21 Better Way**
**Findings, Conclusions, and Final Orders**





#3-CS-PC-21 Better Way
Findings, Conclusions, and Final Orders



5. **Parking.** DBZO Section 4.030 requires two on-site parking spaces for a single-family residence. The site plan identifies a two-car garage as well as a driveway.

6. **Variances.** The applicant requested variances for the following:

   • Coastal Setback – Area of Coastal Erosion
   • Coastal Setback – Area of Visual Concern
   • Front Yard Setback
   • Deck Encroachment Into Rear Yard Setback.

A variance may be granted only in the event that all of the following circumstances exist. The

#3-CS-PC-21 Better Way
Findings, Conclusions, and Final Orders

circumstances are stated in *italics* and followed by Planning Commission findings.

1. *Exceptional or extraordinary circumstances apply to the property which do not apply generally to other properties in the same zone or vicinity, and result from lot size or shape, legally existing prior to the date of this ordinance, or other circumstances over which the applicant has no control.*

   PLANNING COMMISSION FINDING:  The lot depth is an average of approximately 70 feet, the standard for the R-4 Residential Zone is 80 feet.

   - The above, coupled with the coastal setback for erosion of 62 feet, leaves less than 10 feet of buildable area before taking into account the required 20-foot front yard setback.
   - The area of visual concern setback, 25 feet, and the required 20-foot front yard setback would only leave 25 feet of buildable area. The proposed residence, as designed, could not be built within the buildable area.  However, a smaller residence could be built on the property.

   It is the opinion of staff that the property cannot be developed without, at a minimum, granting a variance for coastal setback for erosion. A smaller residence than proposed might meet the required front and side yard setbacks with a 25-foot setback for area of visual concern but not with a 62-foot setback for erosion. The proposed residence, including back deck, cannot be built without coastal setbacks, front yard setbacks, and intrusion into the rear yard setback.

   **The Planning Commission finds that this is not a unique situation since most of the properties on the south side of Sunset Street are similar in shape and location.  The requested variances are not a result of the lot size or shape, or other circumstances over which the applicant has no control, but rather the size of the proposed residence.**

2. *The variance is necessary for the preservation of a property right of the applicant substantially the same as owners of other property in the same zone or vicinity possess.*

   PLANNING COMMISSION FINDING:  There are other residences in the immediate area that would be non-conforming by the current code either for yard setbacks, coastal setbacks for erosion, or coastal setbacks for areas of visual concern. The applicant requests the ability to construct a residence situated on the property similarly to adjacent properties.

   **The Planning Commission finds that the number and size of variances requested are a result of the proposed residence and are not the minimum number or size of variances that could have been requested.   Therefore, the variances requested are not necessary for the preservation of a property right of the applicant.**

3. *The variance would not be materially detrimental to the purposes of this ordinance, or to property in the zone or vicinity in which the property is located, or otherwise conflict with the objectives of any City plan or policy.*

   PLANNING COMMISSION FINDING:  The applicant proposes a single-family residence. It is the opinion of staff:

   - A single-family residence is consistent with the surrounding uses in the immediate vicinity and will not be materially detrimental to the surrounding property owners in the R-4 Residential Zone.

- The comprehensive plan and DBZO for coastal scenic areas allow development within the area of visual concern as long as the request is the minimum necessary and disruption of the visual character has been minimized. As explained in No.1 above, a smaller residence than proposed, without a rear deck, could be built that meets the 25-foot setback for area of visual concern. Therefore, disruption of the visual character could be further minimized.

**The Planning Commission finds that disruption of the visual character could be further minimized and, therefore, conflicts with the City's comprehensive plan and DBZO.**

4.  *The hardship is not self-imposed and the variance requested is the minimum variance which would alleviate the hardship.*

PLANNING COMMISSION FINDING:  It is the opinion of staff that the property cannot be developed without, at a minimum, granting a variance for coastal setback for erosion. However, as noted above, a smaller residence than proposed might meet the required front and side yard setbacks with a 25-foot setback for area of visual concern.

**The Planning Commission finds that due to the size of the proposed residence, the hardship could be considered self-imposed and the variances requested are not the minimum which would alleviate the hardship.**

5.  *The hardship asserted as a basis for the variance does not arise from a violation of the Zoning Ordinance.*

PLANNING COMMISSION FINDING:  The requested variances do not arise from a violation of the Zoning Ordinance.  The property is currently undeveloped.

7.  **Archaeological Resources.**  All of the Depoe Bay planning area falls within the "high density" archaeological site density classification shown in the 1976 Lincoln County Statewide Inventory Historical Sites and Buildings, published by the Oregon State Historic Preservation Office, Parks and Recreation Branch, Department of Transportation. Although the property is not specifically identified as an archaeological site, the applicant needs to be aware of potential archaeological resources and take feasible action to minimize site disturbance and prevent irreversible loss of archaeological resources.  The DBZO Section 3.360(5)(b)(1) states that development on identified archaeological sites shall be conducted in a manner so as to minimize site disturbance and prevent irreversible loss of archaeological resources.  This does not require the property owner to hire an archaeologist, however, it does require the property owner to be cognizant of archaeological resources when developing the site.

## E.  <u>CONCLUSIONS</u>

The record and findings support the conclusion that:

1.  The record and findings support the conclusion that all five circumstances for granting variances do not exist.

## F.  <u>ORDER</u>

It is ORDERED by the Depoe Bay Planning Commission that Case File #3-CS-PC-21 be DENIED for the above-mentioned reasons.

**#3-CS-PC-21 Better Way**
**Findings, Conclusions, and Final Orders**

This ORDER was approved by the Depoe Bay Planning Commission on November 10, 2021.

11/30/21

Michael Phillips, President                    Date
Depoe Bay Planning Commission

# CITY of DEPOE BAY

Post Office Box 8  +  Depoe Bay, Oregon 97341
Phone (541) 765-2361  +  Fax (541) 765-2129
TDD# 1-800-735-2900



March 23, 2023

Interested Parties

**SUBJECT:   Denial of Case File #2-CS-PC-23, Coastal Shorelands Zone/Variance**
**130 NW Sunset St., Depoe Bay, OR 97341**
**Tax Map 09-11-05CA, Tax Lot 13500**

Dear Interested Party:

On Thursday, March 23, 2023, the Depoe Bay Planning Commission voted to deny the requested Coastal Shorelands Development permit and Variance for the above-mentioned property.  The signed Findings, Conclusions, and Final Order, dated March 23, 2023, are enclosed.

This decision will become effective on Friday, April 7, 2023, at 5:00 p.m. unless an appeal is filed at Depoe Bay City Hall.  In order to appeal the decision of the Planning Commission, it is necessary to submit a fee/deposit of $2,001.00, along with a written statement on the City's appeal form explaining the reason(s) for the appeal.

Please contact me if you have any questions.

Sincerely,

**Kit Fox, AICP**
City Planner

Enclosure:   Findings, Conclusions, and Final Order

20230323_DECISION-APPEAL LTR

Ex. 2 to Complaint
Page 1 of 16

# BEFORE THE PLANNING COMMISSION

## OF

## DEPOE BAY, OREGON

| | |
|---|---|
| Request for Development and Variance | ) Case File: #2-CS-PC-23 |
| In the Coastal Shorelands (C-S) Zone | ) Findings, Conclusions, and Final Order |

**APPLICANT:**   Gabe Headrick, Steelhead Architecture

**OWNER:**   Better Way, LLC

**REQUEST:**   The applicant requests Coastal Shorelands Overlay Zone approval to construct a new, single-family residence, with a request for Exceptions from the 40-foot "Area of Visual Concern" setback, and a Variance to reduce the front-yard setback from 20' to a minimum of 10'.

## A.   RELEVANT FACTS:

1. **Property Location:**   The subject property is located at approximately 130 NW Sunset Street in the *North Point* neighborhood, and is further identified on Lincoln County Assessor's Map 09-11-05CA as Tax Lot 13500.



2. **Lot Size and Dimensions:**   The lot measures approximately 0.16 acre.   The lot is somewhat rectangular in shape, with approximately 113 feet of frontage along NW Sunset Street, and a depth that varies from approximately 61 feet (at the east side) to 78 feet (at the west side) between the front and rear property lines.

3. **Zoning Designation:**   Residential Zone R-4.

4. **Plan Designation:**   Residential.

#2-CS-PC-23 (Better Way, LLC)
Findings, Conclusions, and Final Order

5. **Surrounding Land Use:**  Single-family residential uses are located to the west, north, and east of the property. A small cove of the Pacific Ocean (*Depoe Bay*) is located south of the property.

6. **Topography and Vegetation:** (from the 12/15/2022 geotechnical investigation)

*This report presents the results of a geotechnical engineering and engineering geologic study related to the revised proposed residence at the above-referenced lot and provides slope stability calculations on the residential property located at Lot 2, Block 23, in the Sundown Addition in Depoe Bay, Oregon. The purpose of the investigation was to evaluate the cliff face slope stability, characterize the geologic conditions, and provide recommendations for design and construction of a new foundation system for support of a single-family home. This work was performed in accordance with GeoPacific short contract, and subsequent authorization of our proposal and General Conditions for Geotechnical Services. The scope of investigation included: (1) review of consulting reports and geologic mapping pertaining to the site, including geophysical information pertaining to existing sea caves, (2) review of cliff face and proposed foundation setbacks, (3) geologic field mapping, (4) a program of subsurface drilling exploration, (5) preparation of subsurface cross sections and engineering analysis, and (6) preparation of a written report.*

*The project site is an approximately 0.16-acre lot located adjacent to west of 110 NW Sunset Street in the City of Depoe Bay, Lincoln County, Oregon (Figures 1 and 2). The building area is gently sloped to the east and along the rear yard and south property line the slope is steep for a height of approximately 70 feet down to the bay. The lot is bordered by Sunset Street to the north. Approximate elevations on the lot range on the lot range from about 77 to 67 above mean sea level.*

*A single-family home is proposed on the site. The rear property line/slope break setback distance for the currently proposed home has increased from what was previously proposed at about 25 feet to now about 30 feet horizontal.*

7. **Existing Structures:**  The site is undeveloped except for a 6-foot-tall wooden fence, which complies with Section 152.061(C)(2) of the Depoe Bay Zoning Ordinance.[1]

8. **Utilities:**  The following utilities currently serve the subject property:
   a. <u>Sewer:</u>  City sewer service.
   b. <u>Water:</u>  City water service.
   c. <u>Electricity:</u>  Central Lincoln P.U.D.

9. **Development Constraints:**

   a. Coastal setbacks for "Areas of Coastal Erosion" and "Areas of Visual Concern" standards of the Coastal Shorelands (C-S) Overlay Zone.

## B. EVALUATION OF THE REQUEST:

1. **Relevant Criteria:**
   Depoe Bay Zoning Ordinance
   a) Section 152.028: Residential Zone R-4
   b) Section 152.039: Coastal Shorelands Overlay Zone C-S

---

[1] This fence was the subject of a code enforcement complaint in 2022. The property owners were directed by the City Council to remove portions of the fence that encroached into the 40-foot "Area of Visual Concern" setback. The height of the portion of the fence within the front-yard setback area will need to be reduced to forty-two inches (42") at such time as the property is developed.

Ex. 2 to Complaint
Page 3 of 16

#2-CS-PC-23 (Better Way, LLC)
Findings, Conclusions, and Final Order

    c)  Section 152.058: Off-Street Parking and Off-Street Loading Requirements
    d)  Section 152.074: Protection of Coastal Headlands, Areas of Exceptional Aesthetic Resources
    e)  Sections 152.170 – 152.173: Variances
    f)  Sections 152.225 – 152.235: Development Guidelines

Complete descriptions of the relevant criteria are attached to this Staff report.

2. **Applicant's Proposal:**
The applicant requests Coastal Shorelands Overlay Zone approval to construct a new, single-family residence, with a request for Exceptions from the 40-foot "Area of Visual Concern" (AVC) setback, and a Variance to reduce the front-yard setback from 20' to a minimum of 10'.  The applicant submitted the following:

- Application forms and fees/deposits for Substantial Development in the Coastal Shorelands Zone and Variance
- Narrative and exhibits for justification of Variance findings
- Narrative and exhibits for justification of Exceptions to AVC setback
- Geologic Hazard Report from GeoPacific Engineering, dated December 15, 2022
- Proposed site plans, floor plans, roof plan, exterior elevations and front rendering

The applicants previously sought approval for a Coastal Shorelands Permit and Variances to develop a residence on this property in 2021 (Case File #3-CS-PC-21). The previous application sought Variances from the 20-foot front-yard setback; the 10-foot rear yard setback; the "Area of Coastal Erosion" (ACE) setback; and the "Area of Visual Concern" (AVC) setback. The previous proposal was for a slightly larger home than is currently proposed.

The analysis of the previous proposal erroneously applied a 25-foot AVC setback to the property where a 40-foot AVC setback should have been applied. The previous application also erroneously required a Variance for encroachment into the AVC setback (pursuant to DBZO Section 152.171) rather than an Exception from the AVC setback (pursuant to DBZO Section 152.074(B)(1)(g)).

The previous application was denied by the Planning Commission in December 2021. A copy of the Findings, Conclusions, and Final Order dated December 1, 2021, is attached for the Commission's reference. There was no appeal of the Commission's action.

The foregoing information is provided as background only. The Commission should review and assess the current application on its own merits for consistency with the applicable provisions of the Depoe Bay Zoning Ordinance. However, it should be noted that some exhibits in the plans and geologic hazard report identify a gazebo and hot tub within the AVC setback. The hot tub is no longer sought, only the gazebo.

**#2-CS-PC-23 (Better Way, LLC)**
**Findings, Conclusions, and Final Order**



EXHIBIT F

SIDING









STEELHEAD
ARCHITECTURE

DEPOE BAY
JAN. 05, 2023

#2-CS-PC-23 (Better Way, LLC)
Findings, Conclusions, and Final Order

**Applicant Narrative:** The applicant has provided a narrative in support of requested front-yard setback Variance and the requested Exception from the 40-foot "Area of Visual Concern" setback, which will be discussed in the report below.

3. **Public Hearing.** A public hearing was held on March 8, 2023, before the Depoe Bay Planning Commission. Notice of this public hearing was mailed to property owners within a 250-foot radius of the subject property on February 14, 2023, and was published in the Newport *News-Times* on February 17, 2023. Commissioner Imbrie declared a conflict of interest and recused himself due to his role as the application's geotechnical engineer/engineering geologist, so the application was considered by the four (4) remaining Commissioners. All interested parties – including the property owners, the applicant and surrounding property owners – were given an opportunity to provide written and oral testimony.

   At the conclusion of public testimony, there was no request from any interested party for the record to remain open. The public hearing was closed and the Commission began deliberations. In the course of deliberations, there was a motion to deny the application, which died due to the lack of a second. After additional deliberations, there was a motion and second to approve the application that failed on a 2-2 vote. Due to questions about the meaning and effect of the tie vote, there was a unanimous motion of the Commission to continue deliberations to a special meeting on March 23, 2023, to receive additional information and guidance from the City Attorney and Staff.

4. **Public Testimony.** Written testimony in support of and opposition to the application was received subsequent to the completion of the Staff report but prior to the public hearing. Copies of this written testimony were distributed to the Commission and are attached hereto.

   Oral testimony in support of the application was received from the applicant (Gabe Headrick), the applicant's attorney (Bob Custis), the applicant's geotechnical engineer (Jim Imbrie), the applicant's 3rd-party geotechnical review consultant (Jonathan Ciampi), Les Davis, and Richard and Sally Grant. Oral testimony in opposition to the application was received in person from Joel and Robyn Skinner, and via telephone from Carol Pauli and Jean Ohl. Gabe Headrick and Bob Custis provided oral testimony in rebuttal on behalf of the proposed application.

C. **SUMMARY AND STAFF ANALYSIS:** The Planning Commission reviews the proposal for conformance with the appropriate standards of the Depoe Bay Zoning Ordinance (DBZO). To facilitate review, Staff identifies the following:

1. **R-4 Residential Standards.** The following table identifies the R-4 standards and the proposed development.

| | Standard | Proposed |
|---|---|---|
| Front Yard | Min. 20' | 10' |
| West Side Yard | Min. 5', or 1' for each 3' of building height, whichever is greater. The proposed building height is 35', so the minimum required side-yard setback is 11'-8". | 12'-1¾" |
| East Side Yard | | 11'-8" |
| Rear Yard | Min. 10' | 40'-11⅞" |
| Building Ht. | Max. 35' | 35' |

#2-CS-PC-23 (Better Way, LLC)
Findings, Conclusions, and Final Order

The applicant has requested a Variance to reduce the 20-foot front-yard setback requirement, which will be discussed in detail below. Otherwise, the proposed project is consistent with the R-4 development standards.

**In conclusion, the Planning Commission finds that the proposed project—aside from the requested front-yard setback Variance—is consistent with the development and parking standards applicable within the R-4 zone.**

2. **Coastal Setback – Area of Coastal Erosion.** In the Areas of Coastal Erosion (ACE), no excavating, filling, or placement of retaining walls, deck posts or other permanent structures is allowed, unless based on a Geologic Hazard Report approved by the Planning Commission. Based on the Geologic Hazard Report dated December 15, 2022, the applicable area of coastal erosion is the "SLIGHT 45°" standard which requires a 1.0' setback for every 1.0' of bank height from the mean higher high-water line (MHHW) and/or the base of the bank, whichever is greater.



#2-CS-PC-23 (Better Way, LLC)
Findings, Conclusions, and Final Order





#2-CS-PC-23 (Better Way, LLC)
Findings, Conclusions, and Final Order

Using the 1:1 ratio for slight coastal erosion potential, the calculated coastal setback is 62 feet northward from the MHHW (see diagram above). The proposed structure is approximately 70 feet from the MHHW/base of bank and approximately 20 feet north of the top of the bluff. DBZO Section 152.235(A) prohibits excavating, filling, or placement of retaining walls, deck posts or other permanent structures in the ACE setback unless a Geological Hazards Report is approved by the Planning Commission. There are no portions of the proposed structure or improvements that encroach upon the ACE setback.

**In conclusion, the Planning Commission finds that the proposed development will not impact or encroach upon the Coastal Erosion setback for the property. The Planning Commission also finds that the geologic hazard report prepared by GeoPacific Engineering dated December 15, 2022, complies with the City's requirements for such reports in accordance with the provisions of Sections 152.225-152.235 of the Depoe Bay Zoning Ordinance.**

3. **Coastal Setback – Area of Visual Concern.** DBZO Section 152.235(A)(3) describes the "Areas of Visual Concern" (AVC) and identifies that the Area of Visual Concern/Exceptional Aesthetic Resources for this subject site extends 40 feet landward from the top of the coastal bluff (see DBZO Section 152.074(B)(1)(b)). In these areas, the DBZO requires *"the outer coverings of structures that will be visible from within the aesthetic resource area, including roofing materials, are of natural wood materials or designed to look like natural wood materials or are painted or stained in subdued colors."* Based upon the exterior elevation and renderings provided, the proposed structure appears to comply with this requirement.

DBZO Section 152.235(A)(3) states that no grading, excavating, or filling that changes the profile of the top of the bluff or the slope seaward from its top; vegetation removal; or placement of a building is allowed, with only some limited exceptions for vegetation pruning or removal, and placement of benches, tables, chairs, and a single gazebo less than 100 square feet in area. As proposed, portions of the proposed residence and a gazebo are proposed within the 40-foot AVC setback. A gazebo is allowed in this area, so the following discussion addresses the encroachment of the residence.

DBZO Section 152.074(B)(1)(g) permits exceptions from the AVC setback pursuant to the following standards:

*(g) Where a permitted use of a lot existing prior to the establishment of this chapter would be precluded by strict adherence to these requirements, the applicant can ask for an exception to these standards if the applicant meets the following standards:*

*1. The request is the minimum necessary;*

*2. Disruption of the visual character of the area has been minimized; and*

*3. That options such as clustering of improvements, maximizing variance setbacks on the sides of the development away from the aesthetic resource, or other design methods to minimize impact have been exercised or are not feasible.*

The applicant offers the following narrative in support of the requested exception from the AVC setback:

"There are 3 standards to meet for granting an exception. Please note that these standards should also take into account the existing conditions on the street. Specifically, the non-conforming footprints of the neighboring houses which create the existing visual setback. The exception we are asking for is to match the rear setback of the property to the west and to better meet the setback requirement as

#2-CS-PC-23 (Better Way, LLC)
Findings, Conclusions, and Final Order

compared to the property to the east. Evaluating the subject property alone would be ignoring the intent of a visual setback spread across the properties along NW Sunset.

1. The request is the minimum necessary - There is no standard for what a 'necessary' size or depth is for a house size. Per the previous various request, we are proposing to pull the house closer to the road to allow for the house to meet a 25-ft visual setback. The depth (front to back) of our proposed house varies between 18-ft to 38-ft. This is well within the range of any 'normal' house and is less than the depth of 220 NW Sunset (44-ft max depth) and very similar to 110 NW Sunset (32-ft depth). Our design is longer in the East / West direction to minimize the depth of the footprint and the area of its footprint is comparable to other houses in the neighborhood, see Exhibit E.

2. Disruption of the visual character of the area has been minimized - The subject property is a private property and is not a park or city owned open space. Therefore, construction of a structure is not a disruption based on its current empty lot status. Further, the footprint size and massing is well within the range of existing structures in the neighborhood. Refer to Exhibit E for this analysis. Regarding any visual style or context which might play a part of the visual character please refer to Exhibit F which shows the wide variety of home design styles. There is no specific style established in the neighborhood or on the street. Please see a further discussion of these items in the next paragraph. The proposed project contributes a quality house to the neighborhood which is in no way a disruption of visual character.

3. That options such as clustering of improvements, maximizing variance setbacks on the sides of the development away from the aesthetic resource, or other design methods to minimize impacts have been exercised or are not feasible - The standard in this location is for a 40-ft visual setback. Meeting this standard, even if we filled up the side setbacks and made the house as wide as fire code would allow, is not feasible. Further, it would not make any visual difference as the neighboring houses already interrupt any visual setback that this code section is attempting to enforce. The design of the house is a balance to provide privacy between the neighboring properties, visual openings between structures and a similar back setback between the proposed house and the neighbors."

The requested encroachment into the 40-foot AVC setback for the lot varies from 9'-0" near the west end of the house, 12'-5" near the center of the house, and a maximum of 13'-0" near the east end of the house. Based upon the applicant's narrative and the exhibits depicting the appearance of the residence from various vantage points, Staff believes that granting the requested exceptions to the 40-foot AVC setback are warranted for this proposal.

**Based upon its review of the proposed project, the applicable standards to grant an exception to the 40-foot "Area of Visual Concern" setback, and public testimony from all interested parties, the Planning Commission believes that the project does not fully comply with the standards necessary for an exception to allow the residence to encroach to between 9 feet and 13 feet into the 40-foot "Area of Visual Concern" setback. The Planning Commission acknowledges that the applicant has requested a front-yard setback Variance in order for the residence to be located further back from the top of the bluff, away from the aesthetic resource of the south face of North Point as viewed from Depoe Bay (DBZO Section 152.074(B)(1)(g)(3)). However, the Planning Commission believes that the visual prominence of the proposed residence, in terms of its positioning on the lot and the volume of the building envelope, does not**

#2-CS-PC-23 (Better Way, LLC)
Findings, Conclusions, and Final Order

warrant approval of the requested exception. The project could be redesigned to position more of the building footprint outside of the 40-foot setback, and to modify the structural envelope to further reduce its visual prominence due to the encroachment of the upper portions of the building into the "Area of Visual Concern." Therefore, the Planning Commission finds that the requested exception from the 40-foot "Area of Visual Concern" setback is not the minimum necessary (DBZO Section 152.074(B)(1)(g)(1)), and that disruption of the visual character of the area has not been minimized (DBZO Section 152.0740(B)(1)(g)(2)).

4. **Variance.** The proposed residence would encroach to within ten feet (10') of the front property line, where a 20-foot setback is otherwise required under the R-4 zone development standards. The public right-of-way of NW Sunset Street along the frontage of the subject property is 40 feet wide, but the paved roadway is only about 12-15 feet wide and is not centered within the right-of-way (see aerial photo below). The southerly right-of-way line serves as the front property line for the subject property. Based upon Staff's review of aerial photos on the Lincoln County Assessor's website, it appears that several existing residences in the surrounding neighborhood do not comply with the 20-foot front-yard setback requirement.



#2-CS-PC-23 (Better Way, LLC)
Findings, Conclusions, and Final Order

Pursuant to DBZO Section 152.171, a Variance may be granted only in the event that all of the following circumstances exist. The circumstances are stated in *italics* and followed by justification from the applicant's narrative, and Staff's analysis.

1. *Exceptional or extraordinary circumstances apply to the property which do not apply generally to other properties in the same zone or vicinity, and result from lot size or shape, legally existing prior to the date of this ordinance, or other circumstances over which the applicant has no control.*

   <u>APPLICANT JUSTIFICATION:</u> The applicant asserts as follows:

   "Exceptional or extraordinary circumstances - The subject property has an existing lot depth (average just under 70-ft) less than the base zone minimum depth of 80-ft. This condition existed prior to the zoning requirement and creates an exception circumstance. Additionally, the cliff face and related geological conditions at the subject property, and along the south side of NW Sunset, is unique to the neighborhood and surrounding properties in the same zone. These characteristics clearly create a unique circumstance that have to be addressed thru the variance process for projects to be viable."

   <u>PLANNING COMMISSION FINDING:</u> As noted by the applicant, average depth of the lot is less than the 80-foot minimum requirement that otherwise applies to lots in the R-4 zone. Lots in the R-4 zone would typically have a 10-foot rear setback requirement, but the subject property is further constrained by the ACE and AVC setbacks that apply within the Coastal Shorelands overlay zone. When these setbacks along the rear/bluff side of the lot are combined with the 20-foot front-yard setback requirement, the remaining "buildable" portion of the lot would be only about 20 feet deep at the west end of the lot, but would taper to only a few feet at the east end of the lot. The Planning Commission agrees that this combination of front and rear/bluff setbacks are an exceptional circumstance over which the applicant has no control, and that they warrant granting the requested Variance to reduce the front-yard setback to a minimum of 10 feet at the closest point to the property line.

2. *The variance is necessary for the preservation of a property right of the applicant substantially the same as owners of other property in the same zone or vicinity possess.*

   <u>APPLICANT JUSTIFICATION:</u> The applicant asserts as follows:

   "Property rights to match other properties - As stated above, the front setback requirements were added after most of the neighborhood was built and created a non-conforming condition on the majority of the properties along the south side of NW Sunset. In fact, it does not appear that any of the structures along this stretch of NW Sunset meet the front yard setback. The design team has gone to great lengths to establish and meet the erosion setback requirements. We have also met the 25-ft. visual setback, as was the standard that was reviewed in the previous 2021 submittal. To meet this, we're simply asking for our project to be located on the site in a similar location to the adjacent neighbors, within the front setback. Therefore the granting of the variances is necessary for the preservation of the property rights to build a single family house in an R-4 zone."

   <u>PLANNING COMMISSION FINDING:</u> As discussed above, many existing residences in the surrounding neighborhood do not comply with the 20-foot front-yard setback. This includes the adjacent homes to either side, with a minimum 3'-3½" setback at 220 NW Sunset Street and a minimum 6'-2½" setback at 110 NW Sunset Street. A review of aerial photographs of the

neighborhood from the Lincoln County Assessor's website shows that many other existing homes appear not to comply with the 20-foot front-yard setback.  This may be partially attributable to very narrow paved roadways within much wider public rights-of-way, which may tend to give a misleading impression of where the front property lines of lots are actually located. The proposed residence will provide more setback from the front property either of the abutting homes on the south side of NW Sunset Street. The Planning Commission agrees that the apparent frequency of similar setback encroachments in the neighborhood establishes a substantial property right of the applicant, and that preserving this property right warrants granting the requested Variance to reduce the front-yard setback to a minimum of 10 feet at the closest point to the property line.

3.   *The variance would not be materially detrimental to the purposes of this ordinance, or to property in the zone or vicinity in which the property is located, or otherwise conflict with the objectives of any City plan or policy.*

APPLICANT JUSTIFACTION: The applicant asserts as follows:

"Conforming with the base zone and neighborhood - Our proposal is for a single-family residence in an R-4 zone. This is not materially detrimental to the base zone or the general vicinity of the neighborhood. It is exactly what the zone is intended for. The reductions to the front setback would place the proposed project in a location on the site matching many others on the street and maintaining a consistent front/rear yard."

PLANNING COMMISSION FINDING:  The purpose of the Depoe Bay Zoning Ordinance "is to promote the public health, safety, and general welfare, and to assist in carrying out the [City's] Comprehensive Plan." As discussed above, the reduced front-yard setback is consistent with similar reduced front-yard setbacks on other nearby properties. The proposed project complies with the required side-yard setbacks for the lot. As discussed above, the Planning Commission does not believe that encroachments into the AVC setback at the rear of the home are warranted, although the proposed project complies fully with the ACE setback at the rear of the house. Based upon these characteristics of the proposed project, the Planning Commission believes that granting the request Variance will be materially detrimental to the surrounding neighborhood, or to the purposes of the Depoe Bay Zoning Ordinance and Comprehensive Plan because it contributes to the encroachment of portions of the residence into the AVC setback. Therefore, the Planning Commission believes that this finding cannot be made for the proposed Variance.

4.   *The hardship is not self-imposed and the variance requested is the minimum variance which would alleviate the hardship.*

APPLICANT JUSTIFICATION: The applicant asserts as follows:

"Self-imposed hardship - This is an existing property and not a result of any property line adjustments or land splits. The project conforms with the erosion setback requirements and better meets the front setback than the adjacent neighbors. Variances are required for this property that are not a self-imposed hardship."

PLANNING COMMISSION FINDING:  As discussed above, the proposed project complies with other setback requirements for the property, including side setbacks and setbacks for areas of coastal erosion. Furthermore, the requested reduction of the front-yard setback is similar to with the reduced front-yard setbacks that are already present at other properties in the immediate vicinity. Granting a reduced front-yard setback could accommodates reasonable development of the property that is consistent with the patterns of development in the surrounding neighborhood.

However, the Planning Commission believes that the requested Variance arises from a self-imposed choice to place and position the building footprint within 10 feet of the front property line. Although there are other instances of properties in the surrounding neighborhood with reduced front-yard setback conditions, the City's setback requirements have been adopted with the intention of eliminating non-conforming setbacks over time, and ensuring that new development complies with R-4 standards. While a case might be made for a reduced front-yard setback, the Planning Commission believes that the requested 10-foot reduction exceeds the minimum necessary to alleviate the hardship. <u>Therefore, the Planning Commission believes that this finding cannot be made for the proposed Variance.</u>

5.  *The hardship asserted as a basis for the variance does not arise from a violation of the Zoning Ordinance.*

    <u>APPLICANT JUSTIFICATION:</u> The applicant asserts ats follows:

    "Hardship from violation - There is no current violation of the zoning ordinance on the site. The previous fence issue has been dealt with. The hardship is an existing condition of the site without any violations of the zoning."

    <u>PLANNING COMMISSION FINDING:</u> The requested Variance does not arise from a violation of the Zoning Ordinance.  If the project is approved, the height of any remaining fence/wall within the front yard setback area will be reduced to forty-two inches (42") to comply with the Depoe Bay Zoning Ordinance. Therefore, this finding can be made for the requested Variance.

**In conclusion, the Planning Commission finds that not all of the required findings can be made for the requested Variance to reduce the front-yard setback of the proposed residence to 10 feet. For the reasons described above, the Planning Commission finds that the requested Variance would be materially detrimental to the purposes of the Depoe Bay Zoning Ordinance, or to property in the zone or vicinity in which the property is located, or otherwise conflict with the objectives of the Depoe Bay Zoning Ordinance and Comprehensive Plan (DBZO Section 152.171(C)); and that the hardship is self-imposed and the Variance requested is not the minimum Variance which would alleviate the hardship (DBZO Section 152.171(D)).**

5.  **Geotechnical Report Recommendations.** The Geologic Hazard Report was prepared December 15, 2022, and includes design and construction recommendations.  The recommendations were based on site visits, site observations and measurements, limited review of the geologic literature, interpretation of topographic maps, soils, geology, development plats and aerial photographs. In addition to the minimum 40-foot setback from the top of the bluff, approval of a geologic hazards permit should include all design and construction recommendations identified in the December 15, 2022, Geologic Hazards Report.  The report is attached to this Staff report. Upon an approval, a recommended condition is for the applicant to submit a letter to the City, prepared by an engineering geologist, stating that final building plans are in accordance with all the engineering geologist's recommendations.

6.  **Erosion Control and Drainage Plan.**  The City's Public Works Director requests review and approval of plans for erosion control and storm drainage prior to issuance of a building permit.

7.  **Parking.** The DBZO requires two (2) parking spaces for each single-family residence.  The site plan identifies a parking area (2-car garage) as a part of the proposed project.

8. **Archaeological Resources.**  All the Depoe Bay planning area falls within the "high density" archaeological site density classification shown in the 1976 Lincoln County Statewide Inventory Historical Sites and Buildings, published by the Oregon State Historic Preservation Office, Parks and Recreation Branch, Department of Transportation. Although the property is not specifically identified as an archaeological site, the applicant needs to be aware of potential archaeological resources and take feasible action to minimize site disturbance and prevent irreversible loss of archaeological resources.  DBZO Section 152.075(B)(1) states that development on identified archaeological sites shall be conducted in a manner so as to minimize site disturbance and prevent irreversible loss of archaeological resources.  This does not require the property owner to hire an archaeologist, however, it does require the property owner to be cognizant of archaeological resources when developing the site.

9. **Declaration.**  The Applicant/Property Owner shall complete and sign the Declaration of Covenants and Conditions of Responsibility and Indemnity (The Declaration) provided by the City.  Prior to issuance of a building permit, the Applicant or Property Owner shall execute and record the Declaration in the deed records of Lincoln County, Oregon.

D. **CONCLUSIONS:**  In evaluating the request, the Planning Commission bases its decision on compliance with the applicable code standards.  If the Planning Commission finds the request fails to satisfy the ordinance standards, it can move to deny the request, articulating the basic conclusions and rationale for the decision and directing Staff to prepare findings for adoption.

The record and findings support the Planning Commission's conclusion that:

1. The requested exception from the 40-foot "Area of Visual Concern" setback is not the minimum necessary (DBZO Section 152.074(B)(1)(g)(1)). Therefore, the Planning Commission denies this component of the requested Coastal Shorelands Development application.

2. The requested exception from the 40-foot "Area of Visual Concern" setback does not minimize the disruption of the visual character of the area (DBZO Section 152.0740(B)(1)(g)(2)). Therefore, the Planning Commission denies this component of the requested Coastal Shorelands Development application.

3. The requested 10-foot reduction of the front-yard setback would be materially detrimental to the purposes of the Depoe Bay Zoning Ordinance, or to property in the zone or vicinity in which the property is located, or otherwise conflict with the objectives of the Depoe Bay Zoning Ordinance and Comprehensive Plan (DBZO Section 152.171(C). Therefore, the Planning Commission denies this component of the requested Variance.

4. The requested 10-foot reduction of the front-yard setback is a self-imposed hardship and the Variance requested is not the minimum Variance which would alleviate the hardship (DBZO Section 152.171(D)). Therefore, the Planning Commission denies this component of the requested Variance.

E. **ORDER:**

It is ORDERED by the Depoe Bay Planning Commission that Case File #2-CS-PC-23 be DENIED for the above-mentioned reasons.

This ORDER was approved by the Depoe Bay Planning Commission on March 23, 2023.

Judy Faucett, President
Depoe Bay Planning Commission

3-23-23
Date

Attachments:   Project applications and narratives
Project plans, renderings, and exhibits
December 15, 2022, Geologic Hazards Report
Final Order for Case File #3-CS-PC-21
Public testimony
Relevant DBZO criteria:
- Section 152.028: Residential Zone R-4
- Section 152.039: Coastal Shorelands Overlay Zone C-S
- Section 152.058: Off-Street Parking and Off-Street Loading Requirements
- Section 152.074: Protection of Coastal Headlands, Areas of Exceptional Aesthetic Resources
- Sections 152.170 – 152.173: Variances
- Sections 152.225 – 152.235: Development Guidelines

# CITY of DEPOE BAY



Post Office Box 8 + Depoe Bay, Oregon 97341
Phone (541) 765-2361 + Fax (541) 765-2129
TDD# 1-800-735-2900

May 10, 2023

Interested Parties (via email)

**SUBJECT:** **Appeal of Planning Commission Action regarding Coastal Shorelands Development and Variance (Case File #2-CS-PC-23)**
**Approximately 130 NW Sunset St., Depoe Bay, CA 97341**
**Tax Map 09-11-05-CA, Tax Lot 13500**

Dear Interested Party:

On Tuesday, May 2, 2023, the Depoe Bay City Council conducted a public hearing on the appeal of the Planning Commission's action regarding the denial of a Coastal Shorelands Development application and Variance for the above-mentioned property (Case File #2-CS-PC-23). The City Council denied the appeal and upheld the Planning Commission's denial. On May 10, 2023, the Mayor signed the enclosed Findings, Conclusions and Final Order.

This decision will become effective on Wednesday, May 31, 2023, at 5:00 p.m. unless an appeal is filed with the Oregon Land Use Board of Appeals (LUBA) at 550 Capitol Street NE, Suite 235, Salem, OR 97301-2552. An application for an appeal shall include the specific rationale for the appeal with sufficient clarity to allow public agencies and respondents an adequate opportunity to respond to or resolve each issue. Requirements for appealing the decision are described in Oregon Revised Statute (ORS) 197.830 to 197.845, and include filing a "Notice of Intent to Appeal" with the LUBA, and a filing fee and deposit for costs to be established by LUBA.

Please contact me at (541) 765-2361 x15 or via email at planner@cityofdepoebay.org if you have questions.

Sincerely,

**Kit Fox,** MCP
City Planner

Enclosure: Findings, Conclusions and Final Order

Ex. 3 to Complaint
Page 1 of 12

**BEFORE THE CITY COUNCIL**

**OF**

**DEPOE BAY, OREGON**

| | | |
|---|---|---|
| Appeal of Coastal Shorelands Development and | ) | Case File: #2-CS-PC-23 |
| Variance in the Residential R-4 Zone | ) | City Council Meeting Date: May 2, 2023 |

**Findings, Conclusions, and Final Order**

<u>APPELLANT:</u>  Better Way, LLC (represented by Robert J. Custis)

<u>APPLICANT:</u>  Same as Appellant

<u>PROPERTY LOCATION:</u>  The subject property is located at approximately 130 NW Sunset Street, and is further identified on Lincoln County Assessor's Map 09-11-05CA as Tax Lot 13500.



<u>SUMMARY:</u> The Depoe Bay Planning Commission's decision denying a Coastal Shorelands Development and Variance request for a new residence within the Residential (R-4) Zone (Case File #2-CS-PC-23) has been appealed to the City Council. The requested development is for a new residence that encroaches up to 13 feet into the 40-foot "Area of Visual Concern" setback, and up to 10 feet into the 20-foot front-yard setback.

The appellant asserts as bases for the appeal that the Planning Commission did not use legitimate criteria in its decision, as defined by the Depoe Bay Zoning Ordinance (DBZO); that the tie vote of March 8, 2023, did not constitute denial of the application under Depoe Bay city code; that the City's planner recommended approval of the project; and, that the denial was not based on substantial evidence in the record related to applicable DBZO criteria.

The appeal was filed timely on March 28, 2023, by the applicants' attorney. In accordance with the provisions of DBZO Section 152.208(B) "Appeals of a Decision of the Planning Commission," Staff

**Appeal of Case File #2-CS-PC-23**
**Findings, Conclusions, and Final Order**

provided the City Council with the record of the proceedings via email on March 28, 2023, within ten (10) days of the filing of the appeal. The Planning Commission Minutes for the meetings at which the decision was made (March 8, 2023, and March 23, 2023) were approved by the Planning Commission on April 12, 2023, and subsequently transmitted to the City Council via email on April 13, 2023.

On April 3, 2023, the applicants' attorney submitted the attached letter more fully describing the bases of the appeal.

On April 4, 2023, Staff advised the City Council of its intent to place this matter on the May 2, 2023, City Council agenda as a public hearing. The City Council concurred.

On April 12, 2023, notices of the public appeal hearing were mailed to the owners of property located within a 250-foot radius of the subject property, as well as to the appellant/applicant and other interested parties who had provided oral or written testimony at the March 8, 2023, and March 23, 2023, Planning Commission meetings.  Notice of the public appeal hearing was also published in the Newport *News-Times*, on April 14, 2023.

On May 2, 2023, the City Council considered the appeal. Councilor Lindsy Bedingfield disclosed that she had been the complainant regarding a fence erected on the property by the same applicant in 2022. Councilor Fran Recht disclosed that she had submitted written comments in opposition to a previous proposal to develop the subject property by the same applicant in 2021. Neither Councilor Bedingfield nor Councilor Recht recused themselves from participating in the appeal hearing. However, the appellant raised an objection to Councilor Bedingfield's participation on the grounds of bias. Prior to opening the public hearing, the City Council also received additional written testimony that was submitted on May 2, 2023, opposing the appeal from a neighboring property owner, and supporting the appeal from the appellants' legal counsel.

The City Council opened and conducted the public hearing. The appellant provided oral testimony in support of the appeal, summarizing the issues raised in the written appeal and raising additional issues as bases for overturning the Planning Commission's action. Testimony in support of the appeal was also presented by the project's architect, the property owner, and the project's geotechnical consultant. The owners of two (2) nearby properties provided testimony in opposition to the appeal. The appellant then provided a rebuttal to the public testimony in opposition to the appeal.

At the conclusion of public testimony, there was no request from any interested party for the record to remain open. The City Council closed the public hearing and deliberated on the requested appeal. An initial motion to uphold the appeal and overturn the Planning Commission's action failed on a 3-4 vote of the City Council. A subsequent motion to deny the appeal and uphold the Planning Commission's action passed on a 5-2 vote.

**RELEVANT CRITERIA:**  Depoe Bay Zoning Ordinance (DBZO) criteria that are relevant to this appeal are listed by title only below.

**Depoe Bay Zoning Ordinance**
a)  Section 152.028: Residential Zone R-4
b)  Section 152.039: Coastal Shorelands Overlay Zone C-S
c)  Section 152.058: Off-Street Parking and Off-Street Loading Requirements
d)  Section 152.074: Protection of Coastal Headlands, Areas of Exceptional Aesthetic Resources
e)  Sections 152.170 – 152.173: Variances
f)  Sections 152.225 – 152.235: Development Guidelines

Ex. 3 to Complaint
Page 3 of 12

Appeal of Case File #2-CS-PC-23
Findings, Conclusions, and Final Order

g) Planning Commission Findings, Conclusions, and Final Order for Case File #2-CS-PC-23

**APPELLANT'S ARGUMENT, PLANNING COMMISSION FINDINGS & STAFF ANALYSIS:**

The appeal form (submitted on March 28, 2023) and supplemental narrative (submitted April 3, 2023) lay out the bases for overturning the Planning Commission's denial of this application. Before responding to these arguments, Staff would like to address the appellant's claim that "[when] the Castañedas purchased this lot, the property was not subject to the zoning requirements from which they seek a variance." The County Assessor's records show that the Castañedas purchased the lot in July 2004. The 20-foot front-yard setback requirement in the R-4 zone has been in effect since the City's first zoning ordinance was adopted in 1975. The 40-foot "Area of Visual Concern" setback that applies to the bluff side of the subject property was adopted in April 2004.

The bases for the appellants' request to overturn the Planning Commission's denial are provided below. The first four bases (Items 1-4 below) were articulated in a letter from the appellants' legal counsel submitted on April 3, 2023. The subsequent seven bases (Items 5-11 below) were articulated in a letter from the appellants' legal counsel submitted on May 2, 2023.

*1. The Planning Commission is Required to Use Legitimate Criteria in Their Land Use Decisions, as Determined by the Depoe Bay Zoning Ordinance.*

The appellant asserts that the denial of the proposed project "[was] impermissibly based on subjective criteria that have not been applied to the other surrounding properties." It was noted that other nearby properties demonstrate reduced front-yard setbacks, and that the Planning Commission had recently approved a 1-foot front-yard setback for another proposed residence located two lots to the west of the subject property. The appellant states that the reduced front-yard setback was sought so as to reduce the encroachment of the house into the 40-foot AVC setback on the bluff side of the lot. The appellant disputes the Planning Commission's finding that the requested front-yard setback was self-imposed, stating that the lot cannot be developed without a variance from the 20-foot front-yard setback.

Similarly, the appellant objects to the Planning Commission's rejection of the requested exception to the 40-foot AVC setback. The appellant objects to the finding that the residence would be too visually prominent when viewed from the bluff side of the property. The appellant states that the proposed exception from the AVC setback is the "minimum necessary" and that "disruption of the visual character of the area has been minimized." The appellant asserts that the "visual prominence" of the structure is not sufficient grounds to reject the requested encroachment into the AVC setback.

**Planning Commission Findings:** The Planning Commission considered the three (3) standards for granting an exception from the 40-foot AVC setback as stipulated in DBZO Section 152.074(B)(1)(g), and the five (5) findings stipulated in DBZO Section 152.171 in its review of the requested front-yard setback variance. The Planning Commission was able to make affirmative findings in several – but not all – of these instances. The DBZO requires that all of the applicable findings be made in order to grant the requested AVC setback exception or variance, so the Planning Commission could not approve these requests. Specifically, the Planning Commission was unable to affirmatively make the following four (4) findings regarding the proposed project:

Exception from AVC Setback

- The request is the minimum necessary (DBZO Section 152.074(B)(1)(g)I.

Ex. 3 to Complaint
Page 4 of 12

Appeal of Case File #2-CS-PC-23
Findings, Conclusions, and Final Order

- Disruption of the visual character of the area has been minimized (DBZO Section 152.074(B)(1)(g)2).

Variance

- The variance would not be materially detrimental to the purposes of this ordinance, or to property in the zone or vicinity in which the property is located, or otherwise conflict with the objectives of any City plan or policy (DBZO Section 152.171(C)).

- The hardship is not self-imposed and the variance requested is the minimum variance which would alleviate the hardship (DBZO Section 152.171(D)).

As described in the attached Findings, Conclusions, and Final Order dated March 23, 2023, the Planning Commission found as follows regarding the requested exception from the AVC setback:

*Based upon its review of the proposed project, the applicable standards to grant an exception to the 40-foot "Area of Visual Concern" setback, and public testimony from all interested parties, the Planning Commission believes that the project does not fully comply with the standards necessary for an exception to allow the residence to encroach to between 9 feet and 13 feet into the 40-foot "Area of Visual Concern" setback. The Planning Commission acknowledges that the applicant has requested a front-yard setback Variance in order for the residence to be located further back from the top of the bluff, away from the aesthetic resource of the south face of North Point as viewed from Depoe Bay (DBZO Section 152.074(B)(1)(g)(3)). However, the Planning Commission believes that the visual prominence of the proposed residence, in terms of its positioning on the lot and the volume of the building envelope, does not warrant approval of the requested exception. The project could be redesigned to position more of the building footprint outside of the 40-foot setback, and to modify the structural envelope to further reduce its visual prominence due to the encroachment of the upper portions of the building into the "Area of Visual Concern." Therefore, the Planning Commission finds that the requested exception from the 40-foot "Area of Visual Concern" setback is not the minimum necessary (DBZO Section 152.074(B)(1)(g)(1)), and that disruption of the visual character of the area has not been minimized (DBZO Section 152.0740(B)(1)(g)(2)).*

Furthermore, the Planning Commission found as follows regarding the requested front-yard setback variance:

*In conclusion, the Planning Commission finds that not all of the required findings can be made for the requested Variance to reduce the front-yard setback of the proposed residence to 10 feet. For the reasons described above, the Planning Commission finds that the requested Variance would be materially detrimental to the purposes of the Depoe Bay Zoning Ordinance, or to property in the zone or vicinity in which the property is located, or otherwise conflict with the objectives of the Depoe Bay Zoning Ordinance and Comprehensive Plan (DBZO Section 152.171(C)); and that the hardship is self-imposed and the Variance requested is not the minimum Variance which would alleviate the hardship (DBZO Section 152.171(D)).*

**Staff Analysis:**  The project reviewed by the Planning Commission consisted of: 1) a request for development in the Coastal Shorelands Overlay Zone, which included an exception from the 40-foot "Area of Visual Concern" (AVC) setback for portions of the house on the bluff side of the lot; and 2) a request for a Variance to reduce the 20-foot front-yard setback to a minimum of ten feet (10'). The Coastal Shorelands application, AVC setback exception, and Variance application all required the Planning Commission to make specific findings of fact related to the proposal. The Planning Commission also made general findings related to the consistency of the project with the development standards (i.e., setbacks, building height, and

Ex. 3 to Complaint
Page 5 of 12

**Appeal of Case File #2-CS-PC-23**
**Findings, Conclusions, and Final Order**

off-street parking requirements) in the R-4 zone. All of these findings are articulated in the Depoe Bay Zoning Ordinance.

The appellant clearly disagrees with the conclusions reached by the Planning Commission in reviewing the AVC setback exception and front-yard setback variance for the project as currently proposed. However, Staff believes that the Planning Commission's findings are based upon "legitimate criteria" related to DBZO requirements. In addition, the findings describe alternatives to the proposed project that the Planning Commission believed could be consistent with making the required findings for both the AVC setback exception and the front-yard setback variance. Therefore, Staff believes that this basis for the appeal is without merit and should be denied.

**City Council Findings:** Based upon the foregoing discussion, the City Council finds that denial of the project was based upon legitimate criteria contained in the Depoe Bay Zoning Ordinance, and that this basis for the appeal is without merit.

*2. The Tied Vote on March 23, 2023, Does Not Constitute a Denial Under the Depoe Bay City Code.*

The appellant asserts that the failure of the motion to approve the project on a tie (2-2) vote was not equivalent to the denial of the project. The appellant claims that there are no City Code provisions or City Rules of Procedure that define a "majority" vote and/or the effects of tie votes. As such, the appellant claims that the City has no authority to declare that the project was denied as a result of the tie vote on March 8, 2023 (not on March 23, 2023).

**Planning Commission Finding:** The five (5) current members of the Planning Commission were present when its March 8, 2023, meeting was called to order. However, before the public hearing on the subject of this appeal was heard, Commissioner Imbrie recused himself due to a conflict of interested related to his role as the geotechnical consultant for the project applicant. This left the four (4) remaining Commissioners – a quorum of the Planning Commission – to hear the matter. After hearing testimony from all interested parties, there was no request for the record to be left open, and the public hearing was closed for Commission deliberation. There was a motion to deny the proposed project, but the motion died for the lack of a second. Later during deliberations, there was a motion to approve the proposed project, but this motion failed on a tie 2-2 vote. Due to uncertainty about the effect of the tie vote, the Commission subsequently continued its deliberations to a special meeting held on March 23, 2023, to receive additional information from Staff and the City Attorney.

At the March 23, 2023, special meeting, Staff reported that the City Attorney confirmed that the tie vote on the motion to approve the project had the same effect as the passage of a motion to deny the project. The Commission subsequently reviewed and approved the Findings, Conclusions, and Final Order denying the project.

**Staff Analysis:** The Depoe Bay Planning Commission does not have adopted Rules of Procedure. However, the Depoe Bay City Council does have Rules of Procedure that were adopted by resolution (Resolution No. 322 in 2003, as updated through 2022). The Council's Rules of Procedure specifically refer to "Robert's Rules of Order, Newly Revised 10[th] Edition" as guidelines for the conduct of meetings. The Planning Commission follows the City Council's lead in relying upon "Robert's Rules" for guidance. In addition, Section 32.02(B)(4) of the Depoe Bay Code or Ordinances states that "[four] members of the Commission shall constitute a quorum. When a quorum of the Planning Commission is present, a majority of the quorum present and voting shall be sufficient to decide any issue or question brought before the Commission." It is Staff's understanding that, pursuant to "Robert's Rules," a tie vote on a motion fails because an affirmative vote is required to pass any motion. In this case, the initial motion to deny the application failed due to the lack of a second, and the subsequent motion to approve the application failed

Appeal of Case File #2-CS-PC-23
Findings, Conclusions, and Final Order

due to a tie vote. Since neither of these were affirmative actions, the application was denied. Therefore, Staff believes that this basis for the appeal is without merit and should be denied.

**City Council Findings:** Based upon the foregoing discussion, the City Council finds that the March 8, 2023, tie vote on the motion to approve the proposed project was equivalent to the approval of a motion to deny the project, based upon the City Council's adopted Rules of Procedure and "Robert's Rules of Order," and that this basis for the appeal is without merit.

### 3. The City Planner Recommended Approval of the Project.

The appellant argues that the fact that Staff recommended approval of the proposed project "weighs against denying the application, especially with a tie vote to approve it." The appellant argues that Staff's recommendation to approve the project was based upon objective criteria, but the Planning Commission's denial was based upon subjective criteria.

**Planning Commission Finding:** As reflected in the March 8, 2023, report, Staff believed that all of the relevant findings could be made in order to approve the proposed project. Although the Planning Commission was able to make several of the findings in support of the proposed project, it was not able to make all of the required findings to approve the requested AVC setback exception and front-yard setback variance. The Planning Commission's assessment of each of the findings applicable to the proposed project was based upon standards articulated in the Depoe Bay Zoning Ordinance, as reflected in the adopted Findings, Conclusions, and Final Order.

**Staff Analysis:** The Planning Commission is tasked with using its own independent judgement to evaluate development proposals for compliance with the City's Zoning Ordinance and Comprehensive Plan. The Planning Commission is free to accept or reject Staff's recommendations, so long as the final action is based upon relevant provisions of the Depoe Bay Zoning Ordinance and substantial evidence in the record. Staff believes that it was within the Commission's purview to reach a different conclusion about the proposed project than that reached by Staff, and that the Commission did so as City Code requires. Therefore, Staff believes that this basis for the appeal is without merit and should be denied.

**City Council Findings:** Based upon the foregoing discussion, the City Council finds that the City Planner's recommendation to approve the proposed project did not obligate the Planning Commission to accept this recommendation, and that this basis for the appeal is without merit.

### 4. The Denial was not Based on Substantial Evidence in the Record that Relates to the Applicable Criteria in the DBZO.

The appellant asserts that at least one of the Commissioners voted against the project over concerns about the safety of adjacent property owners. The appellant points to the geotechnical analysis and testimony of Commissioner Imbrie as a basis to determine that the proposed development would be safe. The appellant also continues to assert that the Commission's action was based upon subjective criteria rather that the standards articulated in the Depoe Bay Zoning Ordinance.

**Planning Commission Finding:** As discussed above, the Planning Commission was able to make several of the findings in support of the proposed project, but it was not able to make all of the required findings to approve the requested AVC setback exception and front-yard setback variance. The Planning Commission's assessment of each of the findings applicable to the proposed project was based upon standards articulated in the Depoe Bay Zoning Ordinance, as reflected in the adopted Findings, Conclusions, and Final Order.

Ex. 3 to Complaint
Page 7 of 12

Appeal of Case File #2-CS-PC-23
Findings, Conclusions, and Final Order

Among the findings that the Commission was able to make was that the project would not impact or encroach upon the "Area of Coastal Erosion" (ACE) setback, and that the geologic hazard report complied with City standards.

**Staff Analysis:** During the public hearing and its deliberations, the Commission discussed a number of issues related to the proposed project, raised by both Commissioners and members of the public. However, the adopted Findings, Conclusions, and Final Order demonstrate that the Commission's action denying the project was not based upon concerns about public safety, parking, use of the property, or a variety of other issues raised during public testimony at the March 8, 2023, public hearing. The Commission's findings related to the AVC setback exception and variance expressed a belief that a smaller structure would be more in keeping with minimizing the requested AVC exception and variance, which is reasonably related to the required findings and criteria from the DBZO.

**City Council Findings:** Based upon the foregoing discussion, the City Council finds that denial of the project was based upon substantial evidence in the record that related to relevant criteria contained in the Depoe Bay Zoning Ordinance, and that this basis for the appeal is without merit.

### 5. *The Planning Commission Must Only Impose Conditions Upon Property Development that are Connected to A Legitimate State Interest.*

The appellant asserts that the denial of the proposed project is equivalent to the imposition of an improper condition upon the application, and that the burden imposed upon the property owner by such "condition" is not roughly proportionate to the benefit to the government, as required pursuant to *Dolan v. City of Tigard,* 512 U.S. 374 (1994). The appellant also asserts that the Planning Commission's denial of the requested setback variance and exception from the AVC setback are not based upon a legitimate state interest.

**City Council Findings:** The City Council finds that the *Dolan* test of "rough proportionality" is inapplicable to this case, as there are no conditions imposed upon nor exactions sought from the property owners as a result of the Planning Commission's denial of the project. The Planning Commission's grounds for denial of the proposed project – as articulated in the Findings, Conclusions, and Final Order dated March 23, 2023 – are specifically based upon relevant criteria contained in the Depoe Bay Zoning Ordinance. Land use and zoning authority have been generally upheld as an appropriate exercise of cities' police owner in furthering a legitimate state interest in a many past legal decisions, going back as far as *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365 (1926). Therefore, the City Council finds that this basis for the appeal is without merit.

### 6. *Two of the "No" Votes Were Based on Illegitimate Criteria.*

The appellant asserts that one Commissioner voted against the project based upon safety concerns, while another Commissioner voted against the project on the basis of the building footprint. The appellant asserts that these were not legitimate bases for denial of the project that are contained in the Depoe Bay Zoning Ordinance.

**City Council Findings:** The City Council finds that the record of the Planning Commission's action denying the proposed project demonstrates that it was based upon the Commission's inability to make four (4) specific findings cited in the Depoe Bay Zoning Ordinance – two related to the variance request and two related to the AVC setback exception request. The Commission specifically found that the project's

**Appeal of Case File #2-CS-PC-23**
**Findings, Conclusions, and Final Order**

geologic hazard report complied with City requirements, and that the project would not encroach upon the "Area of Coastal Erosion" (ACE) setback for the property, which also derive from specific criteria cited in the DBZO. Therefore, The City Council finds that this basis for the appeal is without merit.

### 7. *The Tied Vote Does Not Constitute a Denial under the Depoe Bay Code of Ordinances and Depoe Bay has Provided no Authority for the Contention That it Does.*

The appellant attempts here to re-frame the argument that the March 8, 2023, tie vote did not result in the denial of the proposed project. The appellant argues that the City has provided no authority for this determination.

**City Council Findings:** The City Council finds that the Council's adopted Rules of Procedure and "Robert's Rules of Order" provide the City's authority to determine that the March 8, 2023, tie vote resulted in denial of the proposed project, as also described above under Item 2. Therefore, The City Council similarly finds that this basis for the appeal is without merit.

### 8. *There Was no Underlying Motion to Deny in Front of the Commission, and Therefore the Tied Vote Could Not Constitute a Denial.*

The appellant attempts to expound on the argument that the tie vote did not result in denial of the proposed project. The appellant correctly notes that there was no motion to deny the application before the Commission during its deliberations.

**City Council Findings:** There was a motion to deny the project made by one of the Commissioners at the March 8, 2023, public hearing, but that motion failed to receive a second and was not considered by the Commission. As discussed in Items 2 and 7 above, the City Council finds that the Planning Commission's tie vote on the motion to approve on March 8, 2023, resulted in the denial of the proposed project. Therefore, the City Council similarly finds that this basis for the appeal is without merit.

### 9. *A City Councilor May Have Submitted the Complaint Regarding Castañedas' Fence and Should Recuse Themselves if That is the Case.*

The appellant asserts that a Councilor who filed a complaint about the fence constructed in the subject property in 2022. The appellant opined that said Councilor would "have an interest in the denial of [the] appeal," and that they should recuse themselves from participating in the appeal public hearing on the basis of a bias against the application.

**City Council Findings:** At the outset of the appeal public hearing, Councilor Bedingfield disclosed that she was the complainant regarding the fence on the subject property in 2022. In addition, Councilor Recht disclosed that she had submitted written comments to the Planning Commission in opposition to a previous proposal to develop this property by the same property owner in 2021. In continuing to participate in the appeal public hearing, both Councilors indicated that their previous actions did not constitute bias that prevented them from considering the appeal of the currently-proposed project on its own merits. Therefore, the City Council finds that this basis for the appeal is without merit.

### 10. *The Weight of the Evidence in the Record Supports Approval, not Denial, of the Castañedas' Proposed Home.*

**Appeal of Case File #2-CS-PC-23**
**Findings, Conclusions, and Final Order**

The appellant re-frames and re-asserts that the Commission's denial of the proposed project was not based upon "legitimate" criteria originating in the Depoe Bay Zoning Ordinance. These are essentially the same arguments raised in Items 1, 4, 5, and 6 above.

**City Council Findings:** The City Council finds that the Planning Commission's action was based upon relevant criteria cited in the Depoe Bay Zoning Ordinance and substantial evidence in the record, as discussed above in Items 1, 4, 5, and 6. Therefore, the City Council finds that this basis for the appeal is without merit.

*11. Recent Developments.*

The appellant states that a car parked along the Castañedas' property line recently caught fire, damaging the fence. The appellant provided photos of vehicles parked on or adjacent to the Castañedas' property, purportedly "in total disregard of [the Castañedas'] ownership rights."

**City Council Findings:** The City Council finds that, while any damage caused to the Castañedas' fence by the recent car fire is unfortunate, there is no evidence that this is related in any way to this appeal. Therefore, the City Council finds that this basis for the appeal is without merit.

In conclusion, the City Council finds that the bases for the appeal are without merit, and that the Planning Commission's action is upheld.

**PUBLIC HEARING:** A duly-noticed public hearing was held on May 2, 2023, before the Depoe Bay City Council. All interested parties were given the opportunity to provide written and oral testimony. At the conclusion of public testimony, there was no request for the record to remain open, and the public hearing was closed.

**PUBLIC TESTIMONY:** Written testimony from the appellant/applicant was provided as a part of the Staff report presented to the City Council. This included correspondence received on May 2, 2023, in opposition to the appeal (from Jean Ohl) and in support of the appeal (front Robert Custis, the appellants' legal counsel). The appellant, members of the project team, and nearby property owners all provided oral testimony at the public hearing on May 2, 2023.

**CONCLUSIONS:** Based upon the foregoing discussion, public testimony, and City Council deliberations, the City Council denies the appeal of Case File #2-CS-PC-23; upholds the Planning Commission's action of March 8, 2023, denying the proposed project for the reasons described in the Findings, Conclusions, and Final Order dated March 23, 2023; and find as follows:

A. The Planning Commission used legitimate criteria in its decision denying this application, based upon relevant criteria established by the Depoe Bay Zoning Ordinance.

B. The tie vote on the motion to approve the proposed project on March 28, 2023, constituted the denial of the application under the authority of the Depoe Bay City Council's adopted Rules of Procedure and "Robert's Rules of Order."

C. The City Planner's recommendation to approve the proposed project was advisory only, and did not obligate the Planning Commission to approve the project.

**Appeal of Case File #2-CS-PC-23**
**Findings, Conclusions, and Final Order**

D. The Planning Commission's denial was based on substantial evidence in the record that relates to the applicable criteria of the Depoe Bay Zoning Ordinance.

E. The Planning Commission's denial did not constitute the impermissible imposition of conditions that were not related to a legitimate state interest or otherwise in conflict with the U.S. Supreme Court's opinion in *Dolan v. Tigard*.

F. The record demonstrates that the votes of the Planning Commissioners opposed to the proposed project were based upon legitimate criteria articulated in the Depoe Bay Zoning Ordinance.

G. The determination that the tie vote of March 8, 2023, constituted denial of the proposed project is authorized by the City Council's adopted Rules of Procedure and "Robert's Rules of Order."

H. Although there was no motion to deny the proposed project considered by the Planning Commission, the failure of the motion to approve the proposed project on a tie vote was equivalent to the denial of the proposed project.

I. At the outset of the public hearing, Councilors Bedingfield and Recht each disclosed previous action or testimony related to the subject property, but each determined that this previous action or testimony did not rise to the level of bias such that they were obligated to recuse themselves from considering the appeal of the Planning Commission's action on the current application.

J. The weight of the evidence in the record supports the denial of the applicants' project as currently proposed.

K. Damage to the appellants' property due to a recent car fire is irrelevant to the appeal of the Planning Commission's action.

**ORDER:** It is ORDERED by the City Council that the appeal of the Planning Commission's action regarding the denial of a Coastal Shorelands Development application and Variance in Case File #2-CS-PC-23 has been DENIED, and that the Planning Commission's action of March 23, 2023, denying the proposed project has been UPHELD. The specific findings for the denial of Case File #2-CS-PC-23 are as follows:

1. The requested exception from the 40-foot "Area of Visual Concern" setback is not the minimum necessary (DBZO Section 152.074(B)(1)(g)(1)).

2. The requested exception from the 40-foot "Area of Visual Concern" setback does not minimize the disruption of the visual character of the area (DBZO Section 152.0740(B)(1)(g)(2)).

3. The requested 10-foot reduction of the front-yard setback would be materially detrimental to the purposes of the Depoe Bay Zoning Ordinance, or to property in the zone or vicinity in which the property is located, or otherwise conflict with the objectives of the Depoe Bay Zoning Ordinance and Comprehensive Plan (DBZO Section 152.171(C).

4. The requested 10-foot reduction of the front-yard setback is a self-imposed hardship and the Variance requested is not the minimum Variance which would alleviate the hardship (DBZO Section 152.171(D)).

Ex. 3 to Complaint
Page 11 of 12

**Appeal of Case File #2-CS-PC-23**
**Findings, Conclusions, and Final Order**

Introduced and passed in a regular meeting of the City Council of the City of Depoe Bay on this 2nd day of May 2023.

_____                    5.10-23
            Mayor                            _____
                                                         Date

Attest: _____
              City Recorder

Attachments:    Appellant's appeal form (March 28, 2023) and supplemental narrative (April 3, 2023)
                Planning Commission Findings, Conclusions, and Final Order (March 23, 2023)
                Planning Commission Minutes of March 8, 2023 (excerpt)
                Planning Commission Minutes of March 23, 2023 (excerpt)
                City Council Rules of Procedure (Resolution Nos. 322, 526-22, 529-22 & 531-22)
                Additional public testimony (received May 2, 2023)